CRIMINAL INJURIES COMPENSATION BOARD
*v.* GOULD

[No. 2, September Term, 1974.]

*Decided January 16, 1975.*

488

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, ELDRIDGE and O'DONNELL, JJ.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Harry A. E. Taylor, Assistant Attorney General,* on the brief, for appellant.

*William C. Miller,* with whom were *Miller, Miller, Steinberg & Brisker* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court. ELDRIDGE, J., dissents and filed a dissenting opinion at page 521 *infra.*

The appellee, Joseph D. Gould (Gould), a sixty-three-year-old resident of the District of Columbia and a self-employed cab driver, was abducted at gun point while operating his taxi in the District on April 11, 1970; driven to Clinton, in Prince George's County, he was there robbed and shot — both in the neck and the back of his head. He spent more than five months hospitalized as a result of his wounds. Thereafter he filed a claim with the appellant, Criminal Injuries Compensation Board (Board), as an "innocent victim" of crime, for an award allowable under the Criminal Injuries Compensation Act (Maryland Code (1957, 1973 Repl. Vol.) Art. 26A, §§ 1-17). When the Board on June 14, 1972 finally disallowed his claim he appealed to the Circuit Court for Montgomery County which vacated the Board's decision and remanded the claim for further consideration.

The Board in urging us to overturn that decision contends that under the provisions of Art. 26A, § 10 (a), the decision was not subject to any judicial review by the Circuit Court for Montgomery County.

Gould leased his taxi at a weekly rate from the Yellow Cab Company of D. C., Inc. (Company) which repaired and mechanically maintained the vehicle. Although he was free to work the days and hours of his choice, he was required to

inform the Company daily concerning his use of the cab at the end of each shift he worked. Approval from the Company was required for "time off" and his relationship could be terminated "for cause." Gould filed United States income tax returns for 1967, 1968 and 1969 as a self-employed person; he made no report of his earnings to the Company and received no compensation from it; Gould, as other drivers similarly situated, was not included within Yellow Cab's casualty or workmen's compensation policies. He received no benefits of any kind from the Company after he was victimized by the crime.

When Gould's claim came before a single member of the Board (Art. 26A, § 8) it was decided—without a hearing—that he was a self-employed cab driver, was the "innocent victim" of a crime and had sustained serious financial hardship (Art. 26A, § 12), but that "the injury was inflicted by a third person in the course of the claimant's employment and that he was in fact an employee . . . covered by the Workmen's Compensation Law of Maryland and for D. C. and must exhaust his remedies before either of those agencies before this Commission [Board] can lawfully make an award. . . ." His claim was placed in an "abated status."

In order to overcome this "abatement" Gould filed a claim with the District of Columbia Bureau of Employees' Compensation (Bureau). Subsequent thereto both the Bureau [1] and the Company [2] wrote the Board, advising that Gould was self-employed, not an employee of the Company

---

1. The "Bureau" wrote that: "The Yellow Cab Company has taken the position that Mr. Gould was not an employee of the said company but was in fact self-employed. From information currently available to the Bureau, it appears that this position is correct. Under the circumstances Mr. Gould would not be eligible for Benefits under the District of Columbia workmen's compensation law."

2. The "Company" wrote that: "Mr. Gould, as all other cab drivers in the District of Columbia, is self-employed as a cab driver. He was operating a taxicab which he rented from Yellow Cab Company of D.C. Inc., for a fixed fee per week. He was at liberty to work as he chose and does not report his earnings to the cab company. He receives no compensation whatsoever from the cab company. He was not entitled to nor did he receive any benefits whatsoever from the cab company as a result of this misfortunate accident."

and was not entitled to nor did he receive any benefits as a result of his "misfortunate accident." The Bureau (an adjunct of the Department of Labor) rejected Gould's claim for compensation benefits on March 24, 1971.[3]

In his further efforts to satisfy the objection raised by the Board, Gould next filed a claim with the Workmen's Compensation Commission of Maryland (Commission). When the case came before the Commission at a hearing on November 8, 1971, counsel for Gould stipulated as to those facts which concerned Gould's self-employment status. Upon the stipulation the Commission found that at the time Gould was shot he was an "independent contractor," that the Uninsured Employers' Fund was not involved and disallowed his claim for compensation benefits.

After having unsuccessfully attempted to claim workmen's compensation benefits in both the District of Columbia and Maryland, Gould's claim was reconsidered by the Board (again by the same single member). The Board's resistance persisted however, this time ruling that the stipulation entered into at the Commission hearing, that he was "not an employee in the involved instance constitutes a deliberate lack of cooperation on his part with both the spirit and the letter of our decision of February 10th, 1971." The Board further noted "it most inappropriate that public monies should be spent to compensate a claimant for injuries received while employed and thereby eligible for other benefits." The claim was again disallowed.[4]

---

**3.** The Bureau, by its Deputy Commissioner, advised Gould that: "After reviewing your claims, statement by the Yellow Cab Company and other information in file, I am unable to recommend payment of compensation in your case on the ground that at the time of your injury you were operating as an independent contractor and were not an employee within the meaning of the Compensation Act."

**4.** After reciting *verbatim* the order passed on February 10, 1971, the Board stated: "Claimant, pursuant to our finding filed a claim with the District of Columbia Workmen's Compensation Commission and also the State of Maryland Workmen's Compensation Commission. Our investigation reveals that claimant stipulated at the Maryland Workmen's Compensation Commission held on November 8th, 1971 that at the time of the crime he was an independent contractor and that the Uninsured Employers Fund was not involved.

We find after reviewing the file, the evidence submitted and after due

Gould, under the provisions of Art. 26A, § 9 (a), then applied "for a consideration of the decision by the *full* Board." The Board, after a hearing, affirmed the action taken by its single member, holding that although the evidence established that Gould drove the cab on a rental basis, received no salary, was not subject to workmen's compensation coverage and filed income tax returns for the "profit and loss from a business," and nonetheless concluded:

> "This case is one of several in recent months where companies have attempted to use State funds by way of this program to protect their alleged independent contractors in lieu of workmen's compensation insurance. By calling the given individual an independent contractor, these companies have to date successfully avoided the expense and exposure of Workmen's Compensation claims. The various times we have ordered the issue to be determined before a Workmen's Compensation Commission has resulted in stipulations between representatives of the employer and claimant that he is in fact an independent contractor. This results in said commission being locked into a finding that the claimant is an independent contractor without the issue ever being fully litigated or heard. We find this practice to be reprehensible and an unfair burden on the State.
>
> Accordingly, *we find under the laws of the State of Maryland as enunciated in Article 101, Section 67, and the cases annotated thereunder, that the claimant is an employee and/or servant; and not an*

deliberation that the *claimant's stipulation* to the Maryland State Workmen's Compensation Commission *that he was not an employee* in the involved instance *constitutes a deliberate lack of cooperation on his part* with both the spirit and the letter of our decision of February 10th, 1971. We think it most inappropriate that public monies should be spent to compensate a claimant for injuries received while employed and thereby eligible for other benefits." (Emphasis supplied.)

*independent contractor.* Therefore, the liability for his injuries must by operation of law, be that of the employer and/or master. Commenting further, we have previously attempted to avoid deciding issues such as the instant case in order not to judge matters usually best left to the powers and jurisdiction of a sister agency. However, in the protection of the State and those citizens eligible for this program, we can no longer permit employers to escape their exposure from the master-servant relationship by referring those injured to this Board, as a substitute therefor." (Emphasis supplied.)

When Gould's appeal came before the Circuit Court the trial judge (Cahoon, J.) held that Art. 26A, § 10, prohibiting judicial review, was "unconstitutional and void," in conflict with the holdings in *Heaps v. Cobb*, 185 Md. 372, 379 [45 A. 2d 73, 76] (1945), and was a "legislative intrusion into inherent powers of the court." It was further held that the Board was an "agency" within the scope of the Administrative Procedure Act (Code (1957, 1971 Repl. Vol.) Art. 41, §§ 244 ff.); and that Gould's appeal was properly before the court within the provisions of Art. 41, § 255 (a). In remanding the case for further consideration the trial court concluded that the Board had exceeded its statutory authority and jurisdiction in undertaking to redetermine the claimant's eligibility for workmen's compensation benefits and that the Board, in finding that the claimant "had not fully cooperated with all *law enforcement agencies,*" had made an unduly strained construction of Art. 26A, § 12 (a), in applying it to proceedings before the Board itself as an adjudicatory body.

## REVIEWABILITY

Article 41, § 255 (a), enacted by Ch. 94 of the Acts of 1957, of the Administrative Procedure Act permits a judicial review to any party "aggrieved by a final decision in a contested case." The section is captioned "Judicial Review."

A "contested case" is defined in § 244 (c) as a proceeding "before an agency in which the legal rights, duties or privileges of specific parties are *required* by law or constitutional right to be determined *after an agency hearing.*" (Emphasis supplied.)

The statute here in question, enacted by Ch. 455 of the Acts of 1968, repealed and re-enacted with amendments by Ch. 401, Acts of 1970, and codified as Art. 26A, § 10 (a), reads as follows:

> "Within thirty days after receipt of the copy of the report containing the final decision of the Board, the Attorney General may, if in his judgment or in the judgment of the Secretary of Public Safety and Correctional Services the award is improper, commence a proceeding in the circuit court of the county or the Supreme Bench of Baltimore City, as the case may be, to review the decision of the Board. Any such proceeding shall be heard in a summary manner and shall have precedence over all other civil cases in such court. The court may, however, take additional testimony, if it so desires. *There shall be no other judicial review of any decision made or action taken by the Board,* by a member of the Board or by the secretary of the Board with respect to any claim." (Emphasis supplied.) [5]

Although statutes relating to remedies and procedure as a general rule are to be liberally construed with a view toward the effective administration of justice, they are not to be given such a construction as will defeat or frustrate the legislative intention. *Commercial Credit Corp. v. Schuck,* 151 Md. 367, 134 A. 349 (1926).

When two statutes relate to the same general subject

---

5. The Bill as introduced (S.B. 4) originally allowed the Attorney General to commence such a court proceeding "if in his judgment the award is improper or excessive." Before enactment the words "or excessive" were deleted.

matter—such as here where Art. 41, § 255 (a) and Art. 26A, § 10 (a) both relate to the right of judicial review of a decision of an administrative agency—to the extent of any conflict between them, the later statute governs. *Board of Fire Commissioners v. Potter,* 268 Md. 285, 300 A. 2d 680 (1973); *Department of Motor Vehicles v. Greyhound Corp.,* 247 Md. 662, 234 A. 2d 255 (1967). *See also United States v. Milk Distributors Ass'n, Inc.,* 200 F. Supp. 792 (D.C. Md. 1961).

Similarly controlling is the premise that where there is a specific enactment and a general enactment " 'which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.' " *Henry v. State,* 273 Md. 131, 328 A. 2d 293 (1974); *Maguire v. State,* 192 Md. 615, 623, 65 A. 2d 299, 302 (1949). *See also* 73 Am.Jur.2d *Statutes* § 416 (1974); 82 C.J.S. *Statutes* § 369 (1953).

We must also consider the object and purpose to be attained by Art. 26A, § 10 (a), as enacted. *See Mass Transit Administration v. Baltimore County Revenue Authority,* 267 Md. 687, 298 A. 2d 413 (1973); *Montgomery Citizens League v. Greenhalgh,* 253 Md. 151, 252 A. 2d 242 (1969); *Truitt v. Board of Public Works,* 243 Md. 375, 221 A. 2d 370 (1966). In ascertaining the true meaning of the statute and the intention of the Legislature in enacting it, aid may be found in the history of its adoption and the object sought to be attained thereunder. *See Clerk of the Circuit Court v. Chesapeake Beach Park, Inc.,* 251 Md. 657, 248 A. 2d 479 (1968); *Truitt v. Board of Public Works, supra; Associated Acceptance Corp. v. Bailey,* 226 Md. 550, 174 A. 2d 440 (1961); *Pressman v. Barnes,* 209 Md. 544, 121 A. 2d 816 (1956).

When, in 1968, the General Assembly enacted the Criminal Injuries Act (Art. 26A) Maryland was but the fifth American jurisdiction to establish a program permitting the unreimbursed victims of crime to be compensated by funds

appropriated by the state for their personal injuries and loss of earnings, if the victim would otherwise suffer serious financial hardship. In its "declaration of policy and legislative intent" the General Assembly recognized that many innocent persons suffer personal physical injury or death as a result of criminal acts, or in their efforts to prevent crime or apprehend a person committing or attempting to commit crime; that such persons, or their dependents, may thereby suffer disability, incur financial hardships or become dependent upon public assistance. A need for governmental financial assistance for such victims was expressly found to exist and the Legislature declared its intent that "aid, care and support be provided by the State, as a matter of moral responsibility, for such victims of crime." *See* Art. 26A, § 1; Comment, *Criminal Victim Compensation in Maryland,* 30 Md.L.Rev. 266, 278-83 (1970); H. Edelhertz and G. Geis, Public Compensation to Victims of Crime, at 175-80 (1974).

The Act provides not only that the victim, but in the event of his death, his surviving spouse, children or other dependents may be eligible for awards; it incorporates a good-Samaritan concept by providing for compensation if the victim's injury or death resulted from apprehending a criminal or attempting to prevent a criminal act (§ 5 (a)). Provision was made for emergency awards (§ 11). The prerequisites for an award emphasize the incurring of "serious financial hardship." Provision is made for the payment of benefits predicated upon the schedule of benefits and degree of disability reflected in the Workmen's Compensation Act (§ 12).

Funds for the payment of the awards made by the Board must be appropriated by the General Assembly, although they are financed in part by an increase in the assessment of court costs upon convictions for criminal offenses (§ 17). Although enacted in 1968, funds to support the Criminal Injuries Compensation Board were not appropriated by the General Assembly until 1969.[6]

---

6. Governor Mandel is quoted as stating at the time the Legislative

The Maryland version is modeled upon the New York statute, adopted in 1966, creating the Crime Victims Compensation Board (N.Y. Exec. Law, Art. 22, McKinney (1972)). While our Act is based on "moral responsibility," the New York Legislature declared its intent to aid, care and support such victims of crime "as a matter of grace." Among the American jurisdictions providing compensation for such injuries only Maryland and New York contain a provision undertaking to preclude judicial review.[7] Art. 26A, § 10 (a) is substantially identical to the provisions in § 629 of the New York statute. The New York section differs only in that it permits its Attorney General to commence a court proceeding "If in his judgment the award is improper *or excessive.*" In England the Criminal Injuries Compensation Scheme set out in a "White Paper" similarly provides for no judicial review.

It has been suggested that opposition to judicial review was based upon the concept that the programs are *ex gratia* (as it is declared to be in New York and in Great Britain), with benefits conferred as a favor rather than as a matter of right, but that this doctrine has not stood the test in Great Britain "where the writ of sovereign grace runs on a smoother track." It has further been observed that "[o]pposition to the arbitrariness implicit in the New York and Maryland position should not obscure the danger that

---

Council measure was proposed to the General Assembly in 1966 that the Bill " 'was viewed at the time with great skepticism' " and that the "legislators felt that they would be venturing into 'an uncharted area where we didn't have any guidelines to go by.' They were also concerned about the possible costs, with estimates ranging from $1 million to $10 million per year." *See* H. Edelhertz and G. Geis, Public Compensation to Victims of Crime, at 176 (1974) and "Second International Conference on the Compensation of the Innocent Victims of Violent Crime" (Baltimore, 1970) at 1.

7. Alaska provides that all orders and decisions of its Board "shall be final." Hawaii permits judicial review by one aggrieved "on the sole ground that a decision was in excess of the Commission's authority or jurisdiction." In California and New Jersey there are no statutory provisions for appeal, but it appears that since in each a hearing is required, judicial review would be permitted under their respective Administrative Procedure Acts. In Massachusetts the claim is filed in a district court, a hearing is held by a district court judge and decisions are apparently appealable as in other civil cases. In Washington appeals are expressly provided for under that state's Administrative Procedure Act.

[the] boards could become enmeshed in frequent and unwarranted appellate litigation." *See* H. Edelhertz and G. Geis, Public Compensation to Victims of Crime, at 278-79 (1974).

The General Assembly, conceding an inability to ameliorate to any degree the threat of violent crime, and undertaking to assume the consequences of such crime as a public burden, on the ground of "moral responsibility," in enacting Art. 26A was embarking on uncharted waters in a noble social experiment without any real background data of experience. The recent nature of this type of legislation, the uncertain estimate of the volume of claims to be made under the Act, and the incalculable amount of the funds required to be appropriated for its administration confronted our lawmakers when they adopted this "welfare-theory" of compensation. *See* Comment, *Criminal Victim Compensation in Maryland, supra.* The statutory scheme for eligibility, the prerequisites for awards and the computation of benefits were all novel. Since the funds to be disbursed were public there can be sensed a legislative hesitancy on disbursement without some restraint.

It was with this historical and factual background that Art. 26A, § 10 (a) was enacted. In providing that only the Attorney General might commence a court proceeding to review a decision of the Board when in his judgment, or in the judgment of the Secretary of Public Safety and Correctional Services, the award was *improper*, the Legislature obviously intended to place a check upon the unfettered disbursement of public funds and a restriction upon possible excessive awards.

One of the primary rules concerning statutory construction is that the General Assembly in enacting legislation does so with a full knowledge as to prior and existing law and judicial decisions with respect to such law. *See Harry Berenter, Inc. v. Berman,* 258 Md. 290, 265 A. 2d 759 (1970); *Capital Park and Planning Comm'n v. Silkor Corp.,* 246 Md. 516, 229 A. 2d 135 (1967); *Giant Food, Inc. v. Gooch,* 245 Md. 160, 225 A. 2d 431 (1967); *St. Joseph Hospital v. Quinn,* 241 Md. 371, 216 A. 2d 732 (1966); *Gibson v. State,*

204 Md. 423, 104 A. 2d 800 (1954). Thus, in enacting Art. 26A, § 10 (a) in 1968, and re-enacting it in 1970, the Legislature did so with full knowledge of the provisions of the Administrative Procedure Act, enacted in 1957, and of our decisions thereunder. It showed its clear intention by this particular and subsequent enactment to exclude decisions by the Board from being within the ambit of Art. 41, § 255 (a) and the broad scope of judicial review permitted under Art. 41, § 255 (g) of the Administrative Procedure Act. It would seem "an inescapable conclusion that the intended omission was by deliberate choice." *See County Comm'rs v. Donohoe,* 220 Md. 362, 152 A. 2d 555 (1959).

As another reason demonstrative of an intent to exempt such proceedings from the applicability of the Administrative Procedure Act, it could be argued with some force that since no hearing before the Board is *required* under Art. 26A, § 8 (d) to determine in the first instance the legal rights or privileges of a claimant, such a proceeding before the Board precludes it from being a "contested case" within the definition of Art. 41, § 244 (c).[8] *See Bernstein v. Board of Education,* 245 Md. 464, 226 A. 2d 243 (1967) (hearing by County Board of Education not a "contested case"); *Department of Health v. Walker,* 238 Md. 512, 209 A. 2d 555 (1965) (no requirement for an agency hearing for the issuance of a permit). *Compare Murray v. Department of Social Services,* 260 Md. 323, 272 A. 2d 16 (1971) (where an "opportunity for a fair hearing" before the Department of Social Services was required under the provisions of the Social Security Act). But we need not here so decide.

Not only did the General Assembly intend to place the decisions and actions of the Board outside the scope of the review permitted under the Administrative Procedure Act,

---

8. Maryland Code Art. 26A, § 8 (d) provides that in the first instance the single Board member to whom the claim is assigned may decide in favor of the claimant on the basis of the documents filed and the report of investigation; it is only when he is unable to decide the claim upon those documents that he shall order a hearing. Although Gould was given a hearing before the full Board, upon the request of his attorney, the record does not otherwise disclose that any hearing was conducted—even after the single member of the Board disallowed his claim on January 31, 1972.

but in view of the experimental nature of the legislation, its background, history and the object and purposes sought to be attained by it, intended as well, by the enactment of Art. 26A, § 10 (a)—as had New York and Great Britain—so far as it might be within the legislative power to do so, to preclude any regular judicial review.

The right to an appeal is not a right required by due process of law, nor is it an inherent or inalienable right. *Lindsey v. Normet*, 405 U. S. 56 (1972); *Griffin v. Illinois*, 351 U. S. 12 (1956); *Brown v. State*, 237 Md. 492, 498-99, 207 A. 2d 103, 108 (1965); *Winkler v. State*, 194 Md. 1, 16-17, 69 A. 2d 674, 679-80 (1949), and cases therein cited. *See also* 16 Am.Jur.2d *Constitutional Law* § 584 (1964); 2 Am.Jur.2d *Administrative Law* § 557 (1962); 4 Am.Jur.2d *Appeal and Error* § 1 (1962). An appellate right is entirely statutory in origin and no person or agency may prosecute such an appeal unless the right is conferred by statute. *See Lohss v. State*, 272 Md. 113, 116, 321 A. 2d 534, 536-37 (1974); *Mace Produce Co. v. State's Attorney*, 251 Md. 503, 508, 248 A. 2d 346, 350 (1968); *Subsequent Injury Fund v. Pack*, 250 Md. 306, 309, 242 A. 2d 506, 509 (1968); *Switkes v. John McShain, Inc.*, 202 Md. 340, 343, 96 A. 2d 617, 619 (1953). *See also Ex parte Abdu*, 247 U. S. 27 (1917); 2 J. Poe, Pleading and Practice § 826 (Tiffany ed. 1925). If appellate review is not permitted unless expressly granted by statute, as was held in *Urbana Civic Ass'n, Inc. v. Urbana Mobile Village, Inc.*, 260 Md. 458, 460-61, 272 A. 2d 628, 630 (1971), *a fortiori*, there is equally no right of appeal if that right is expressly excluded by statute.

"The Legislature cannot, of course, interfere with the judicial process by depriving litigants from raising questions involving their fundamental rights in any appropriate judicial manner, nor can it deprive the courts of the right to decide such questions in an appropriate proceeding." *Schneider v. Pullen*, 198 Md. 64, 68, 81 A. 2d 226, 228 (1951).

Notwithstanding the clear expressed intention by Art. 26A, § 10 (a) to exempt the decisions and actions of the Board from judicial review, under Art. 41, § 255 (a), this

Court, in a long line of cases, has consistently held that the Legislature cannot divest the courts of the inherent power they possess to review and correct actions by an administrative agency which are arbitrary, illegal, capricious or unreasonable. *Baltimore Import Car Service v. Maryland Port Authority*, 258 Md. 335, 342, 265 A. 2d 866, 869-70 (1970); *Liquor License Commissioners v. Leone*, 249 Md. 263, 268, n. 4, 239 A. 2d 82, 85, n. 4 (1968); *Insurance Comm'r v. National Bureau of Casualty Underwriters*, 248 Md. 292, 300, 236 A. 2d 282, 286 (1967); *Burns v. Mayor & City Council of Midland*, 247 Md. 548, 554-55, 234 A. 2d 162, 166 (1967); *Bernstein v. Board of Education, supra; Truitt v. Board of Public Works, supra; Poe v. Mayor & City Council of Baltimore*, 241 Md. 303, 308-09, 216 A. 2d 707, 709-10 (1966); *Edwardsen v. State*, 220 Md. 82, 89, 151 A. 2d 132, 136 (1959); *Department of Health v. Walker, supra; Scherr v. Braun*, 211 Md. 553, 564, 128 A. 2d 388, 393 (1957); *Town of District Heights v. County Comm'rs*, 210 Md. 142, 146, 122 A. 2d 489, 492 (1956); *Albert v. Public Serv. Comm'n*, 209 Md. 27, 40, 120 A. 2d 346, 352 (1956); *Board of Zoning Appeals of Howard County v. Meyer*, 207 Md. 389, 400-01, 114 A. 2d 626, 631 (1955); *Board of Education v. Allender*, 206 Md. 466, 475, 112 A. 2d 455, 459-60 (1955); *Johnstown Coal & Coke Co. v. Dishong*, 198 Md. 467, 473-74, 84 A. 2d 847, 850 (1951); *Gianforte v. Board of License Comm'rs*, 190 Md. 492, 498-99, 58 A. 2d 902, 905-06 (1948); *Brashears v. Lindenbaum*, 189 Md. 619, 627-28, 56 A. 2d 844, 849 (1948); *Cromwell v. Jackson*, 188 Md. 8, 22, 52 A. 2d 79, 86 (1947); *Heath v. Mayor & City Council of Baltimore*, 187 Md. 296, 304-05, 49 A. 2d 799, 804 (1946); *Heaps v. Cobb*, 185 Md. 372, 379, 45 A. 2d 73, 76 (1945); *Hecht v. Crook*, 184 Md. 271, 280-81, 40 A. 2d 673, 677 (1945); *Federico v. Bratten*, 181 Md. 507, 509, 30 A. 2d 776, 777 (1943).

Chief Judge Hammond, who delivered the majority opinion in *Insurance Comm'r v. National Bureau of Casualty Underwriters, supra,* stated:

"The courts have been alert to exercise their residual power to restrain improper exercises of

administrative powers whether judicial or legislative in nature. If the legislature has not expressly provided for judicial review, a court will ordinarily utilize its inherent powers to prevent illegal, unreasonable, arbitrary or capricious administrative action. In *Heaps v. Cobb*, 185 Md. 372, 379, this Court said: 'The legislature is without authority to divest the judicial branch of the government of its inherent power to review actions of administrative boards shown to be arbitrary, illegal or capricious, and to impair personal or property rights; * * *,' and then quoted the opinion in *Hecht v. Crook*, 184 Md. 271, 280:

'Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion * * *.' "

248 Md. at 300, 236 A. 2d at 286.

More recently, in *Baltimore Import Car Service v. Maryland Port Authority, supra,* Judge Singley, for the Court, wrote:

"[I]t is equally well settled that when the statute creating an agency makes no provision for judicial review of the agency's determination, courts will act where a decision is not supported by facts, or where an action is not within the scope of delegated authority, or is arbitrary, capricious or unreasonable. *Board of Education of Carroll County v. Allender*, 206 Md. 466, 112 A. 2d 455 (1955); *Heaps v. Cobb*, 185 Md. 372, 380, 45 A. 2d 73 (1945); *Hecht v. Crook*, 184 Md. 271, 280-81, 40 A. 2d 673 (1944). This is the modern view, as even Professor Davis reluctantly concedes, 4 Davis

*Administrative Law Treatise* § 28.21 (1958) at 112; Berger, "Administrative Arbitrariness and Judicial Review," 65 Columbia L.Rev. 55 (1965); Jaffe, "The Right to Judicial Review," 71 Harv.L.Rev. 401, 769 (1958); and see also, Cohen, "Some Aspects of Maryland Administrative Law," 24 Md.L.Rev. 1, 35-38 (1964) and Oppenheimer, "Administrative Law in Maryland," 2 Md.L.Rev. 185, 208-10 (1938)." 258 Md. at 342, 265 A. 2d at 869-70.

The rule announced in *Hecht v. Crook, supra,* that in the absence of any statutory provision for an appeal such review by the courts may be "through the writ of mandamus, by injunction or otherwise" was not only restated in *Heaps v. Cobb, supra,* but reiterated in *Hammond v. Love,* 187 Md. 138, 49 A. 2d 75 (1946); *Brashears v. Lindenbaum, supra; Gianforte v. Board of License Comm'rs, supra; Town of District Heights v. County Comm'rs, supra; Insurance Comm'r v. National Bureau of Casualty Underwriters, supra.*

Where, as here, no appeal was provided by statute and the Administrative Procedure Act was inapplicable, we held in *Capital Park and Planning Comm'n v. Rosenberg,* 269 Md. 520, 307 A. 2d 704 (1973), that relief by way of mandamus was properly invoked where the withholding of approval of a preliminary subdivision plan was shown to have been arbitrary and capricious. Similarly, in *Department of Health v. Walker, supra,* judicial review by way of mandamus was held proper where there was "no statutory provision for hearing or review and where public officials were alleged to have abused the discretionary powers reposed in them," and there had been an arbitrary denial of the issuance of a sewage disposal permit. In *Hammond v. Love, supra,* this Court held that relief by way of mandamus was appropriate where election supervisors, acting as a quasi-judicial body, misconstrued the law and their own statutory powers; and that such illegal action was reviewable without being characterized as "arbitrary." In *Heaps v. Cobb, supra,* relief by way of mandamus was

granted to direct the payment of retirement benefits where the trustees of a municipal retirement system reached an erroneous conclusion of law as to whether or not the deceased employee was "in the actual performance of [his] duty" at the time of his death.[9] In each of these cases there was no vestigial discretion remaining in the administrative agency and the writ of mandamus directed the result.

In addition to relief by mandamus, resort to relief by way of certiorari has been held appropriate where an inferior tribunal, whether created by a public or private law, acting in a quasi-judicial capacity has undertaken to act contrary to law or beyond the scope of its jurisdiction and the lawfulness of such action could not be inquired into upon appeal. *State v. Jacob*, 234 Md. 452, 199 A. 2d 803 (1964); *Kalis v. Brown*, 199 Md. 498, 87 A. 2d 163 (1952); *Johnson v. Board of Zoning Appeals*, 196 Md. 400, 76 A. 2d 736 (1950); *Riggs v. Green*, 118 Md. 218, 84 A. 343 (1912); *Williamson v. Carnan*, 1 G. & J. 184 (1828); 2 J. Poe, Pleading and Practice § 723 (Tiffany ed. 1925).

Maryland Rule K 41 defines "inferior tribunal" to include the official or body, public or private, whose proceedings are sought to be reviewed.

In *Riggs v. Green, supra,* although it was concluded that no appeal would lie from the issuance of a writ of certiorari, it was held that the writ had been properly issued to question the regularity of the proceedings by which the Board of School Commissioners, acting in a quasi-judicial

---

**9.** Relief by way of mandamus was recognized but not applied in Urbana Civic Ass'n, Inc. v. Urbana Mobile Village, Inc., 260 Md. 458, 272 A. 2d 628 (1971) (involving approval of subdivision plan); in Tyler v. Baltimore County, 251 Md. 420, 247 A. 2d 704 (1968) (involving approval of landfill permit upon alleged erroneous interpretation of regulations, but remanded for additional evidence); McNulty v. Board of Supervisors of Elections, 245 Md. 1, 224 A. 2d 844 (1966) (based upon erroneous interpretation of election statute, but denied on the merits); Town of District Heights v. County Comm'rs, 210 Md. 142, 122 A. 2d 489 (1956) (denied on the merits since officials acted within their discretion); Albert v. Public Service Comm'n, 209 Md. 27, 120 A. 2d 346 (1956) (denied because appeal available by statute); Gianforte v. Board of License Comm'rs, 190 Md. 492, 58 A. 2d 902 (1948) (denied because appeal available by statute); Hecht v. Crook, 184 Md. 271, 40 A. 2d 673 (1945) (denied on the merits); Walter v. Montgomery County, 180 Md. 498, 25 A. 2d 682 (1942) (to compel county officials to repair road, denied because officials acted within their discretion).

capacity, in trying charges preferred against a teacher had denied him the representation of counsel and had ordered his dismissal at a hearing from which he was absent. The lower court, upon issuing the writ, had stricken the order of the Board dismissing the teacher and remanded the proceedings for proper legal action before the Board.

Judge Burke, who delivered the opinion of the Court, stated:

"No appeal from the decision of the board is provided by law. In such a situation, if the procedure adopted by the board is irregular, or illegal, the teacher has a right to have that procedure reviewed and corrected by *certiorari* proceedings.

In *Williamson v. Carnan*, 1 G. & J. 196, Chief Judge Archer announced the following principles which he said were adjudged and settled by the Court:

*One.* That every inferior jurisdiction, whether created by a public or a private law, is subject to have its proceedings inspected either by appeal, or by *certiorari* and *mandamus*, where such jurisdiction acts judicially. 1 *Salk.* 146; *Rex v. Inhabitants*, 1 Ld. Ramy. 580. They would be coerced to perform their duties, and restrained and confined within their proper limits as prescribed by law.

*Second.* That where these jurisdictions act in a summary manner, or in a new course different from the common law, a *certiorari* is the peculiar and appropriate remedy; as in such a case, a writ of error will not lie. *Groenvelt v. Burwell*, 1 Salk. 263 Com. Rep. *Israel v. Allen*, decided in Baltimore County Court.

*Three.* That a *certiorari* does not go to try the merits of the question, but to see whether limited jurisdictions have exceeded their bounds.

*Rex v. Moreley,* 2 Burr, 1042." 118 Md. at 225-26, 84 A. at 345.

In *Williamson v. Carnan, supra,* certiorari was held proper to order the Levy Court not to illegally close a road. *See also Swann v. Mayor & Common Councilmen of Cumberland,* 8 Gill 150 (1849), holding that certiorari should have been granted to determine whether the council had acquired approval to tax the citizenry to pay for a street improvement under a statute which specified the requirements for "sufficient approval." [10]

*See* as well *State v. Jacob,* 234 Md. 452, 199 A. 2d 803 (1964), in which this Court reversed the denial of certiorari by the lower court where a review was there sought to determine whether a justice of the peace had, by an erroneous application of the law, exceeded his jurisdiction in granting "probation without verdict." Although the decision was based on the issue of "jurisdiction, rather than of mere irregularity in the proceedings," it was recognized that "certiorari may be invoked to ascertain whether an inferior tribunal has transcended its limited powers."

In England under their Criminal Injuries Compensation Scheme,[11] providing for "ex gratia" compensation to the victims of crime and those injured by criminal violence, review by way of certiorari to test the Board's interpretation of the provisions of the Scheme has been regularly recognized notwithstanding the provision—similar to Art. 26A, § 10 (a)—that the Board's "decisions will not be subject to appeal or to ministerial review." *See Reg. v. Criminal*

---

**10.** Certiorari was held to have been properly denied in Kalis v. Brown, 199 Md. 498, 87 A. 2d 163 (1952), upon a finding that the trial magistrate in the Housing Court of Baltimore City did have jurisdiction over the realty company which had been fined for violations of municipal housing ordinances. In Johnson v. Board of Zoning Appeals, 196 Md. 400, 76 A. 2d 736 (1950), it was held that the certiorari authorized by the Baltimore County Zoning Act was a procedure separate and distinct from common law certiorari and was similar to the appeal provision in the Baltimore City Zoning Act; that in the absence of statutory authority no appeal would lie since the lower court was exercising a special statutory jurisdiction.

**11.** *See* D. Foulkes, *Compensating Victims of Violence,* 52 A.B.A.J. 237-39 (1966).

*Injuries Comp. Bd., ex parte Lain,* [1967] 2 Q.B. 864, 2 All E.R. 770, which was followed in *Reg. v. Criminal Injuries Comp. Bd., ex parte Schofield,* [1971] 2 All E.R. 1011 (Q.B.); *Reg. v. Criminal Injuries Comp. Bd., ex parte Lawton,* [1972] 3 All E.R. 582 (Q.B.); *Reg. v. Criminal Injuries Comp. Bd., ex parte Ince,* [1973] 3 All E.R. 808 (Q.B.). In each of the cases certiorari was granted to correct erroneous interpretations or determinations of law by the Board.

There is a dearth of judicial authority under the New York statute which was the model for Art. 26A, § 10 (a). *Goldmeer v. Crime Victims Comp. Ed.,* 32 N.Y.2d 679, 343 N.Y.S.2d 359, 296 N.E.2d 256 (1973), throws no light upon the subject; in a one line per curiam a motion to dismiss the appeal was granted upon the ground that the appeal did not lie. In *Johnsen v. Nissman,* 39 A.D.2d 578, 331 N.Y.S.2d 796 (2d Dept. 1972), it was held that the claimant's application for benefits under the Act had been filed too late and should not be considered by the Board as had been ordered by the trial court.

When Gould docketed his "appeal," invoking Art. 41, § 255 (a) and Maryland Rule B2,[12] counsel for the Board had assured his counsel that the Board's decision was appealable under the Administrative Procedure Act and the Board now here concedes that it is estopped to argue that there is not at least a minimum permissible judicial review where personal or property rights are involved. The Board, however, contends that such review—by mandamus or certiorari—is here contraindicated because Gould does not possess such standing, and such judicial review may not be granted where a gratuity, privilege or discretionary disbursement is involved.

Although from our holdings in *Heaps v. Cobb, supra,* and in *Johnstown Coal and Coke v. Dishong,* 198 Md. 467, 84 A. 2d 847 (1951), it would appear that the impairment of

---

12. Resort to the statute and the rule cannot grant a right of appeal if such appeal is not authorized by statute. Urbana Civic Ass'n, Inc. v. Urbana Mobile Village, Inc., 260 Md. 458, 462-63, 272 A. 2d 628, 631 (1971).

"personal or property rights" is a condition precedent to judicial review of alleged arbitrary, illegal or capricious actions of an administrative board, our later decisions unqualifiedly seem to permit such judicial review without conditioning it upon the existence of such rights. *See County Council v. Investors Funding Corp.*, 270 Md. 403, 434-37, 312 A. 2d 225, 242-43 (1973), recognizing that such determinations are "always open to judicial review by an aggrieved party" and quoting with approval *Insurance Comm'r v. National Bureau of Casualty Underwriters, supra,* where this Court adopted the view that checks on administrative power are predicated upon the "residual power [in the courts] to restrain improper exercises of administrative powers whether judicial or legislative in nature." 248 Md. at 300, 236 A. 2d at 286. *See also* 1 K. Davis, Administrative Law Treatise, § 1.09 at 68-69 (1958), and 2 F. Cooper, State Administrative Law, at 679 (1965).

There are benefits, privileges, mere licenses and entitlements which, in our modern society, are awarded by governmental action, not as a matter of right but through the exercise of a sound discretion. Notwithstanding statutory provisions to the contrary, these "grants" have been held to be within the ambit of judicial review of the action of the agencies created to administer them.

In *Graham v. Richardson*, 403 U. S. 365 (1971), the United States Supreme Court, in holding that state statutes which denied welfare benefits to certain aliens were in violation of the equal protection clause, stated: "[T]his Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' *Sherbert v. Verner*, 374 U. S. 398, 404 (1963); *Shapiro v. Thompson*, 394 U. S. at 627 n. 6; *Goldberg v. Kelly*, 397 U. S. 254, 262 (1970); *Bell v. Burson*, 402 U. S. 535, 539 (1971)." 403 U. S. at 374.

In *Goldberg v. Kelly*, 397 U. S. 254 (1970), the Court held that welfare benefits were a matter of "statutory entitlement for persons qualified to receive them," and procedural due process was applicable to the termination of such benefits.

Mr. Justice Brennan, who delivered the majority opinion for the Court, stated:

"The constitutional challenge cannot be answered by an argument that public assistance benefits are 'a "privilege" and not a "right." ' *Shapiro v. Thompson*, 394 U.S. 618, 627 n.6 (1969). Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, *Sherbert v. Verner*, 374 U.S. 398 (1963); or to denial of a tax exemption, *Speiser v. Randall*, 357 U.S. 513 (1958); or to discharge from public employment, *Slochower v. Board of Higher Education*, 350 U.S. 551 (1956).' (9. See also *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117 (1926) (right of a certified public accountant to practice before the Board of Tax Appeals); *Hornsby v. Allen*, 326 F.2d 605 (C.A. 5th Cir. 1964) (right to obtain a retail liquor store license); *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (C.A. 5th Cir.), cert. denied, 368 U.S. 930 (1961) (right to attend a public college).) The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961), 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' See also *Hannah v. Larche*, 363 U. S. 420, 440, 442 (1960)." 397 U. S. at 262-63.

The Court stated, in a note:

"(8.) It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.' Much of the existing wealth in this country takes the form of rights that do not fall within traditional common-law concepts of property. It has been aptly noted that '[s]ociety today is built around entitlement. . . . to aid security and independence. Many of the most important of these entitlements now flow from government: subsidies to farmers and businessmen, routes for airlines and channels for television stations; long term contracts for defense, space, and education; social security pensions for individuals. Such sources of security, whether private or public, are no longer regarded as luxuries or gratuities; to the recipients they are essentials, fully deserved, and in no sense a form of charity. . . .'" 397 U. S. at 262, n. 8,

citing Reich, *Individual Rights and Social Welfare: The Emerging Legal Issues*, 74 Yale L.J. 1245, 1255 (1965). *See also Dandridge v. Williams*, 397 U.S. 471 (1970), recognizing the right of judicial review concerning eligibility for welfare benefits where Maryland had adopted a "maximum grant" regulation based upon a "standard of need" of eligible family units and fixed a ceiling of $250 per month.

The right to a building permit has been held reviewable to determine whether an agency acted unlawfully or arbitrarily. *Burns v. Mayor & City Council of Midland, supra; Board of Zoning Appeals v. Meyer, supra; Heath v. Mayor & City Council of Baltimore, supra. See also Department of Health v. Walker, supra*, involving denial of sewage disposal permit. Although a liquor license is held to be a privilege and not a property right, arbitrary or illegal decisions of the agencies commissioned to issue them are not beyond review. *See Liquor License Comm'rs v. Leone, supra; Gianforte v. Board of License Comm'rs, supra; Brashears v.*

*Lindenbaum, supra; Federico v. Bratten, supra.* So, too, limited judicial review is available in connection with a license to drive a cab, although the license is a "mere privilege" and not a property right. *See Albert v. Public Service Comm'n, supra.* In *Truitt v. Board of Public Works, supra,* this Court upheld the right of judicial review of the discretionary action of the Board of Public Works in dispensing funds to three hospitals under the Hospital Construction Loan Act of 1964, to which benefits none of the hospitals had a "right."

Since we have held that disability pension laws are by nature "remedial legislation," *Saxton v. Board of Trustees,* 266 Md. 690, 296 A. 2d 367 (1972), and since the provisions of Art. 26A establishing a program for compensating the victims of crime by state funds, where disability and financial dependency have resulted, is similarly "remedial in nature," our decisions permitting judicial review in pension disability cases appear to be analogous. *See Baker v. Board of Trustees,* 269 Md. 740, 309 A. 2d 768 (1973); *Severn v. Baltimore City,* 230 Md. 160, 186 A. 2d 199 (1962); *Adams v. Board of Trustees,* 215 Md. 188, 137 A. 2d 151 (1957); *Heaps v. Cobb, supra; Hecht v. Crook, supra;* in each of which the right to judicial review, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts of the administrative agency, was recognized. In *Saxton v. Board of Trustees, supra,* it was held that the right to special death benefits accrued when the claimant had satisfactorily performed the duties of his employment and met all the conditions precedent, although it was there recognized that the law relating to eligibility may be changed prior to the happening of the defined contingencies. *See also Thomas v. Police Comm'r,* 211 Md. 357, 127 A. 2d 625 (1956), where the majority of this Court rejected the view that a refund to the widow of a policeman who had made contributions to the pension fund was not "a matter of grace with the legislature."

As it is aptly pointed out in *People ex rel Heydenreich v. Lyons,* 374 Ill. 557, 562-63, 30 N.E.2d 46, 50 (1940), although

512

there is no obligation upon any governmental unit to support the poor and the destitute, once the state voluntarily assumes such humanitarian obligation, the means employed must not be applied arbitrarily or unreasonably—if so, judicial relief is available.

We conclude that once a claimant, such as Gould, met the statutory qualifications set forth in Art. 26A, § 5, for an award he possessed a sufficient "personal right" and eligibility to the benefits provided in § 12, and as an aggrieved party was entitled to seek judicial examination of the action of the Board, by reason of the fact that the General Assembly, not "as a matter of grace," or "*ex gratia*" (as in New York and England), but rather in recognition of a "moral responsibility," created a scheme of benefits upon a "welfare-theory" of compensation for such victims of crime.

Although we disagree with the conclusions of the trial court that Art. 26A, § 10 (a) is unconstitutional in that it undertakes to bar any appeal from the decisions of the Board and that a review of the Board's action is within the purview of the Administrative Procedure Act, under Art. 41, § 255 (a), we hold that the Legislature in enacting § 10 (a) similarly did so with full cognizance of our long line of decisions recognizing, that in the absence of any statutory right to appeal, the courts are vested with the inherent residual right to review and restrain improper exercises of administrative powers by agencies alleged to have acted arbitrarily, illegally, capriciously and unreasonably, and did not intend by § 10 (a) to preclude such type of judicial examination. *See Johnson v. Robison*, 415 U. S. 361 (1974), where the appellee, denied educational assistance under the Veterans' Readjustment Benefits Act, brought an action for declaratory judgment. Judicial review of the decisions of the Administrator of Veterans' Affairs on any questions of law or fact was prohibited by 38 U.S.C. § 211 (a) (1970). The United States Supreme Court in the majority opinion by Mr. Justice Brennan, while recognizing that the section was not intended to permit day to day judicial review of the determinations and interpretations of veterans' administrative policy, held nonetheless that there was no

congressional statutory intent to preclude judicial cognizance of a constitutional challenge such as that made by the appellee to a statute proscribing the payment of benefits to him and who asserted a denial of "equal protection."

Since Gould's "appeal" asserted arbitrary, illegal, capricious and unreasonable action by the Board, we conclude, as we here interpret § 10 (a), that review of the Board's action, upon the allegations he made, was properly before the Circuit Court for Montgomery County for scrutiny within the scope of mandamus or certiorari.

Although Gould's application for judicial review, under Maryland Rule B2, was misappropriately captioned as an "appeal" his memorandum in support thereof, docketed as a "petition," a copy of which was served both upon the Board and its counsel, sufficiently complied factually with the requirements of Maryland Rule BE40 (b) [mandamus], as well as Maryland Rule K43 [certiorari], to be considered as a "petition" under either.

"Where there has been a compliance with the substance of the requirements of statutes or rules and the other parties have not been prejudiced, technical irregularities cannot be made the basis for depriving persons of the opportunity to assert their legal rights." *Hertelendy v. Montgomery County*, 245 Md. 554, 565, 226 A. 2d 672, 679 (1967), quoting with approval from *Town of Somerset v. Montgomery County Board of Appeals*, 245 Md. 52, 61, 225 A. 2d 294, 299-300 (1966). *See also Board of County Comm'rs v. Kines*, 239 Md. 119, 125, 210 A. 2d 367, 370-71 (1965); and *Irvine v. Montgomery County*, 239 Md. 113, 117, 210 A. 2d 359, 361 (1965). Since the "appeal" was docketed upon the assurance of counsel for the Board that its decision was subject to an appeal and the Board here concedes that by its concurrence it is estopped to deny that at least a minimum judicial review exists, there was, without prejudice to the Board, a substantial compliance by Gould with the procedure for obtaining judicial review of the Board's action and any technical irregularity by captioning his application as an "appeal" should not be held to be a basis for having deprived

Gould of his opportunity to assert his legal rights in the Circuit Court for Montgomery County.

The office of mandamus, as generally used, is to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right. *Miller v. City of Baltimore*, 262 Md. 423, 426, 278 A. 2d 61, 63 (1971), citing from *George's Creek Coal & Iron Co. v. Allegany County Comm'rs*, 59 Md. 255, 259 (1883), where, however, the acts and duties necessarily call for the exercise of judgment and discretion on the part of such officials mandamus will not lie to direct the manner in which such discretion shall be exercised. *County Council v. Egerton Realty, Inc.*, 217 Md. 234, 140 A. 2d 510 (1958); *Hillyard v. Chevy Chase Village*, 215 Md. 243, 137 A. 2d 555 (1958); *Town of District Heights v. County Comm'rs*, *supra; Walter v. Montgomery County*, 180 Md. 498, 25 A. 2d 682 (1942).

On the other hand, the object of the writ of certiorari is not to authorize the court to decide the case on its merits, but merely to determine whether the inferior tribunal has proceeded in a summary manner and in a course contrary to the law or in excess of its jurisdiction. *Kalis v. Brown, supra; Johnson v. Board of Zoning Appeals, supra; Swann v. Mayor & Common Councilmen of Cumberland, supra; Williamson v. Carnan, supra.*

In view of the discretion still remaining in the Board under Art. 26A, § 12—even after eligibility might be established—concerning the extent of "serious financial hardship," the amount of any payments received or to be received from any other source, and the computation of the benefits, if any, to which Gould might be entitled, the trial court could not mandate the payment of benefits to him as in those cases where by mandamus the issuance of a permit, or a license, or the payment of a pension has been ordered. Since the trial court, upon the record before the Board, did not undertake to decide the case on its merits, but undertook

to ascertain whether the Board had acted contrary to law and outside the scope of its jurisdiction, we conclude that it is more appropriate that Gould's application for judicial review be here treated as an application for certiorari rather than for mandamus, and we treat it as such. *See Moulden v. State*, 217 Md. 351, 353, 142 A. 2d 595, 596 (1958), where this Court finding "it apparent that the questions sought to be raised [by appeal] render 'it desirable and in the public interest that the case should be reviewed,'" treated an appeal as an application for certiorari. *See also Shipley v. State*, 201 Md. 96, 93 A. 2d 67 (1952), where we held that a writ of certiorari was available to test the constitutionality of a section of the statute under which a defendant had been convicted. By analogy Gould's "appeal" undertook to test the constitutionality of Art. 26A, § 10 (a).

In *Reg. v. Criminal Injuries Comp. Bd., ex parte Lain, supra*, Lord Parker, C. J., in holding that the Queen's Bench "has jurisdiction to inquire into the decision of the board in order to see whether there is on the face of the record any error of law . . . ." stated:

"Finally, it is to be observed that the remedy [by certiorari] has now been extended, [citations omitted] to cases in which the decision of an administrative officer is only arrived at after an inquiry or process of a judicial or quasi-judicial character. In such a case this court has jurisdiction to supervise that process.

We have as it seems to me reached the position when the ambit of certiorari can be said to cover every case in which a body of persons of a public as opposed to a purely private or domestic character has to determine matters affecting subjects provided always that it has a duty to act judicially. Looked at in this way the board in my judgment comes fairly and squarely within the jurisdiction of this court. . ." [1967] 2 Q.B. at 882, [1967] All E.R. at 778.

## THE BOARD'S ACTION

When Gould's claim was disallowed on January 31, 1972, upon "reconsideration" by a single commissioner, it was found that his stipulation before the Maryland Workmen's Compensation Commission that he was not an employee "constitutes a deliberate lack of cooperation on his part with both the spirit and letter of our decision of February 10th, 1971" [directing the claimant to exhaust his compensation remedies]. When the full Board on June 14, 1972, upheld the rejection of the claim by the single commissioner, although concluding that Gould was "an innocent victim of a crime" and that "serious financial hardship is determined" not only found that the stipulation "locked the Commission into a finding that the claimant is an independent contractor without the issue ever being fully litigated or heard" — a practice the Board found "to be reprehensible and an unfair burden on the State" but, notwithstanding the decision of the Maryland Workmen's Compensation Commission nonetheless found under the provisions of "Art. 101, § 67, and the cases annotated thereunder, that the claimant is an employee and/or servant and *not* an independent contractor." The Board in denying benefits to Gould concluded that "the liability for his injuries must, by operation of law, be that of the employer and/or master."

Art. 26A, § 12 (d), provides that any award made under the article shall be reduced by the amount of any payments, received or to be received, from any source, including any award of the Workmen's Compensation Commission under Art. 101. Thus, any Workmen's Compensation benefits award to Gould would operate as a reduction in the amount of any benefits which might be awarded him under Art. 26A.

Section 12 (a), concerning "cooperation," reads as follows:

"No award shall be made unless the Board or Board members, as the case may be, finds that (1) a crime was committed, (2) such crime directly resulted in personal physical injury to, or death of the victim, and (3) police records show that such

crime was promptly reported to the proper authorities; and in no case may an award be made where the police records show that such report was made more than forty-eight hours after the occurrence of such crime unless the Board, for good cause shown, finds the delay to have been justified. The Board, upon finding that any claimant or award recipient *has not fully cooperated with all law enforcement agencies,* may deny or withdraw any award, as the case may be." (Emphasis supplied.)

An independent contractor is not an "employee" entitled to Workmen's Compensation benefits under the provisions of Maryland Code 1957 (1964 Repl. Vol.) Art. 101, § 67. *See Bowers v. Eastern Aluminum Corp.*, 240 Md. 625, 214 A. 2d 924 (1965). Such an independent contractor has been defined as one who contracts to perform a certain work for another according to his own means and methods, free from the control of his employer in all details connected with the performance of the work, except as to its product or result. *Marine v. Service Trucking Co.*, 225 Md. 315, 170 A. 2d 188 (1961); *Snider v. Gaultney*, 218 Md. 332, 146 A. 2d 869 (1958).

Of the several criteria to be applied in determining the relationship, the right to control the worker in the performance and manner of doing the work is the most decisive test. *Thompson v. Paul C. Thompson & Sons*, 258 Md. 391, 395, 265 A. 2d 915, 917 (1970); *Anderson Nursing Homes v. Walker*, 232 Md. 442, 444, 194 A. 2d 85, 86 (1963).[13]

Article 101, § 2, vests in the Commission original and exclusive jurisdiction to determine cases arising under that article; upon an appeal to a court of competent jurisdiction under Art. 101, § 56, the Commission's decision is prima facie correct. When no appeal is taken, the decision becomes conclusive and "stands unimpeached as of its original date."

---

**13.** The criteria under the District of Columbia Workmen's Compensation Act appear to be the same. *See* Cardillo v. Mockabee, 102 F. 2d 620 (D. C. Cir. 1939).

*See Robin Express, Inc. v. Cuccaro,* 247 Md. 262, 230 A. 2d 671 (1967).

Even upon an appeal to the courts " 'where the terms and manner of employment are undisputed, the Court should determine as a matter of law whether the injured workman was an employee or an independent contractor . . . .' " *Charles Freeland & Sons v. Couplin,* 211 Md. 160, 168, 126 A. 2d 606, 611 (1956), quoting *Williams Constr. Co. v. Bohlen,* 189 Md. 576, 579, 56 A. 2d 694, 695 (1948).

Where, as here, it appears that the facts concerning Gould's employment status were undisputed—conceded by stipulation—it would exalt form over substance to require that the issue be nonetheless litigated by an evidentiary hearing.[14] The Commission—as did the Bureau—could have made its ruling upon the documentary evidence submitted with the claim. *See Hathcock v. Loftin,* 179 Md. 676, 22 A. 2d 479 (1941).[15]

What Judge Smith said for the Court in *Mayor v. Shearwater Sailing Club,* 265 Md. 280, 288 A. 2d 887 (1972), seems here to be particularly applicable. He stated:

> "Where a statute establishes a fact-finding body or commission and it has jurisdiction over the parties and the subject matter its decisions on questions of fact are conclusive and final in the absence of fraud, unless an appeal is provided by law to some appellate or supervisory tribunal. *Schluderberg, Etc. Co. v. Baltimore,* 151 Md. 603, 613-14, 135 A. 412 (1926)." 265 Md. at 285, 288 A. 2d at 891.

*See also* 2 Am.Jur.2d *Administrative Law* § 486, at 293-94 (1962).

---

14. The Commission was not bound by the "stipulation"; it was empowered under Maryland Code 1957 (1964 Repl. Vol.) Art. 101, § 40 (a), to make its own investigation of the claim. *See also* Peddicord v. Franklin, 270 Md. 164, 174-76, 310 A. 2d 561, 567 (1973), concerning "stipulations."

15. The Board did not take issue with the manner by which Gould's claim for compensation benefits was denied—upon the documents submitted—by the District of Columbia Bureau of Employees' Compensation.

It would seem frivolous to suggest that Gould by a fraud "stipulated" himself out of workmen's compensation benefits as part of some insidious scheme to improperly obtain benefits from the Board when one considers that under the provisions of Art. 101, § 40 (b), upon any aggravation of his condition he would have had the right to reopen his compensation case and claim additional benefits.

Since the Commission had jurisdiction over Gould's status and did, upon the undisputed facts, determine as a matter of law that he was an "independent contractor," that decision was subject only to appellate review in the courts as provided by Art. 101, § 56; when no appeal was taken, the decision was final and not subject to being controverted in a collateral proceeding. *See Taylor v. Ramsay Co.*, 139 Md. 113, 124, 114 A. 830, 834 (1921). *See also Cogley v. Schnaper & Koren Constr. Co.*, 14 Md. App. 322, 327-28, 286 A. 2d 819, 822-23 (1972).

Although the doctrine of res judicata has been held not to apply to decisions of administrative agencies, *see Gaywood Ass'n v. M.T.A.*, 246 Md. 93, 99, 227 A. 2d 735, 738 (1967); *see also* L. Cohen, *Some Aspects of Maryland Administrative Law*, 24 Md.L.Rev. 1, 20-24 (1964), we here conclude that the decision by the Commission that Gould was an "independent contractor" was conclusive and not subject to collateral attack by the Board upon its own initiative. When the Board, contrary to the Commission's decision, undertook to make a finding that Gould was in fact an "employee," it clearly arrogated unto itself a function reserved unto the courts and transcended the power vested in it as an administrative agency.[16] Its attempt to redetermine his status was clearly erroneous as a matter of law.

When the Board undertook to reject Gould's claim because of a deliberate "lack of cooperation on his part," it undertook

---

16. The Board reached a contrary conclusion in Claim No. 205-P-70, where it held that although "We do not concur with the finding of the Workmen's Compensation Commission [that the claimant was not an employee but an independent contractor], but as a result thereof, are compelled to conclude that this is not a justifiable issue before this Board." *See* 3 Criminal Injuries Compensation Board Ann. Rep. 17-19 (1971-72).

to bring itself, as an administrative agency, within the concept of a "law enforcement agency" and overstrained the clear statutory language in Art. 26A, § 12 (a). In the context in which the term "law enforcement agency" is used in the statute, following immediately upon the provision concerning the time within which reports of any such crime are to be filed, it is clear that the term is intended to mean a showing of cooperation on the part of the claimant with those who are charged with the investigation of crime, the apprehension of the criminal and his prosecution under the law.

All policemen, without regard to rank, have been held to be "law enforcement officers." *Frazier v. Elmore*, 180 Tenn. 232, 173 S.W.2d 563 (1943). Similarly, an FBI agent is held to be a "law enforcement officer." *Otten v. United States*, 210 F. Supp. 729 (S.D. N.Y. 1962). In *Pratt v. State*, 9 Md. App. 220, 226, 263 A. 2d 247, 250 (1970), an officer commissioned by the governor to protect corporate mercantile establishments was held to be a "law enforcement officer." The Bureau of Motor Vehicles of New York has been held not to be a "law enforcement agency" which might invade the secrecy of Grand Jury proceedings. *See In re Special Report of Grand Jury*, 192 Misc. 857, 77 N.Y.S.2d 438 (Erie Co. Ct. 1948). Similarly, a former member of a Grand Jury has been held not to be a "law enforcement agent" privileged from divulging names of those who had given him information concerning gambling. *See In re Schwartz*, 133 N.J.L. 79, 42 A. 2d 564 (1945). Since the term was obviously intended to include the police, prosecutors and arguably, the courts and even the Grand Jury, the Board in applying the term to itself as the agency empowered to administer the Act clearly made an erroneous interpretation of law.

Although, concededly, as the Board argues, there is an implied requirement of cooperation on the part of the claimant in that he must seasonably file his claim and file supporting data, there is no requirement anywhere in the article that he must successfully litigate a claim for workmen's compensation benefits, nor by filing such claim satisfy transitory subjective standards of the Board. We

agree with the conclusion by the trial court that it would be "a perversion of the function of an adjudicatory body to dispense [its] largesse only to those who are willing to be cooperative with [it]."

Mistaken interpretations of law, however honestly arrived at, are held not to be within the exercise of sound administrative discretion and the legislative prerogative, but to be arbitrary and illegal. *Dept. of Health v. Walker, supra; Hammond v. Love, supra; McNulty v. Board of Election Supervisors, supra. See also Severn v. Baltimore, supra;* and *Walter v. Board of County Comm'rs of Montgomery County,* 179 Md. 665, 22 A. 2d 472 (1941).

Where, as here, the Board usurped the power of the courts and exceeded its jurisdiction in redetermining Gould's status as an independent contractor and as well erroneously applied unto itself the provisions of Art. 26A, § 12 (a), concerning cooperation with law enforcement agencies, we think it singularly befitting under the holdings in *State v. Jacob, supra; Kalis v. Brown, supra; Johnson v. Board of Zoning Appeals, supra; Riggs v. Green, supra;* and *Williamson v. Carnan, supra;* that Gould's docketed "appeal" be appropriately considered as an application for certiorari. Having treated it as such, we affirm the decision of the lower court in its reversal of the decision made by the Board and in its remand of Gould's claim for further consideration.

> Order of the Circuit Court for Montgomery County affirmed; costs to be paid by the appellant.

*Eldridge, J., dissenting:*

Maryland Code (1957, 1973 Repl. Vol.), Art. 26A, § 10 (a), provides for judicial review of decisions of the Criminal Injuries Compensation Board only where the Attorney General or the Secretary of Public Safety and Correctional Services believes that the "award is improper." The statute mandates that "There shall be no other judicial review of any decision made or action taken by the Board . . . ." Such

language, in my view, does more than merely preclude judicial review under the Administrative Procedure Act, Code (1957, 1971 Repl. Vol.), Art. 41, § 255 (a). It prohibits judicial review whether by the Administrative Procedure Act, mandamus, certiorari, or otherwise.

With respect to the basis for the circuit court's decision, I believe that where no constitutional right or issue of procedural due process is involved, and where no pre-existing personal or property right is present, the Legislature may constitutionally couple the award of a gratuity with a condition precluding judicial review. Therefore, I would reverse.