John Swann, Charles S. Swann, and Robert Swann, by John Swann, their next friend, *vs.* The Mayor and Common Councilmen of the town of Cumberland.—*December,* 1849.

The mayor and common councilmen of the town of *Cumberland,* passed an ordinance, under the act of 1815, ch. 136, to grade, &c., *Washington* street in said town, upon the petition of the owners of two-thirds of the property lying upon a *part,* only, of said street. Held:

That under this act said corporation might pass an ordinance to improve a particular part of a street, upon application of the owners of two-thirds of the property situated on that part, but can order the *whole* street to be improved only upon application of two-thirds of the property owners on the whole street.

In all cases of special limited jurisdiction, the proceedings must conform strictly to the authority conferred.

An appeal is given by our statute law in any civil case in which a writ of error will lie.

As a general rule, an appeal will lie in any civil case where the court below proceeds, under its usual and general jurisdiction.

Where a special jurisdiction is given to the county court, to be exercised in a peculiar mode, and not to be proceeded in according to the course of the

common law, or where an appeal is given to it from some inferior tribunal, an appeal does not lie.

In this case the county court brought the proceedings of the mayor and common councilmen before it, by a writ of *certiorari*. HELD: that in so doing, it acted in virtue of its ordinary jurisdiction, and an appeal lies from its judgment upon the writ.

The process of *certiorari*, is the appropriate mode by which superior courts examine into the authority of an inferior tribunal, and ascertain whether it has transcended the special powers to which it is limited by law.

Appeal from *Allegany* county court.

Upon the petition of the appellants, a *certiorari* was issued from said court, directed to the mayor and councilmen of the town of *Cumberland*, commanding them to return a certain warrant issued by them, directed to the bailiff of said town, and levied upon the property of the petitioners, and all the papers and proceedings relating thereto.

The return of this writ sets forth the 9th section of the act of 1815, ch. 136, entitled, "an act to provide for the appointment of commissioners for the regulation and improvement of the town of *Cumberland*, in *Allegany* county, and to incorporate the same," as follows:   9. "*And be it enacted,* that the said commissioners shall have power, when requested in writing by the owners of two-thirds of the property on any street or alley, or parts thereof, in said town, to cause the same to be graded, paved, or otherwise improved, as the case may be, if, in their discretion, they shall think fit so to do, and to levy the expense thereof on the property binding on said street or alley, agreeable to the extent of said lots on the said street or alley, and to collect the expense of grading, paving or otherwise improving the same, in the same manner and on the same conditions as shall hereafter be prescribed by this act, for collection of the tax in said town."   The 10th section provides for the collection of assessments made in virtue of this act, by warrants issued to the bailiff of said town, in the nature of a *fieri facias*. The return further states, that by virtue of the powers conferred by this act, upon the petition in writing of "two-thirds of the property owners on *Washington* street, from *Wills'* creek bridge to *Spruce* alley," the said mayor and councilmen passed an

ordinance, exhibited with the return, the title of which is, "To grade, set curb stones, and pave *Washington* street, on the west side of *Wills'* creek, in the town of *Cumberland;*" and which recites: "Whereas the owners of two-thirds of the property on *Washington* street, (commencing at *Wills'* creek bridge, and terminating with the property of the heirs of *Robert Swann*, deceased,) in the town of *Cumberland*, have petitioned in writing," &c., and enacts that *Washington* street shall be graded. That said mayor and councilmen proceeded to assess and levy the expenses of improving said street upon said property holders, and issued a warrant to the bailiff of said town, in conformity with the provisions of said act, which was duly levied upon the property of the appellants. A plat of said *Washington* street was exhibited with this return, showing that said street extended from *Wills'* creek bridge two squares beyond *Spruce* alley. The court dismissed the petition and writ, and gave judgment for costs against the petitioners, who appealed to this court.

The cause was argued before DORSEY, C. J., CHAMBERS, MAGRUDER, and FRICK, J.

By PERRY and SEMMES, for the appellants, and
By McKAIG, for the appellees.

CHAMBERS, J., delivered the opinion of this court.

The return to the *certiorari*, to which alone we must look for the facts on which the questions depend, which are involved in this case, sets out the act of Assembly of 1815, ch. 136, the petition and proceedings before the mayor and council, the ordinance professing to execute the authority given by the act of Assembly, and the warrant in nature of an execution against the appellants.

The act of 1815, ch. 136, authorises the mayor and council to improve the streets, or parts thereof, on application of the owners of two-thirds of the property thereon, and *to collect from each owner*, by a warrant in nature of a *fieri facias*, his

proportion of the expense. A plat is returned, and referred to in the proceedings as proof of the location of *Washington* street, and the number of owners, and the extent of their possessions, by which plat it appears that the said street, commencing at the *Wills* creek bridge, runs too squares beyond *Spruce* alley.

The return also sets out the petition, which asks for the improvement of *Washington* street, from the bridge over *Wills* creek to *Spruce* alley, and also the names of the subscribers thereto, and the calculations and estimates showing by what *data* they regulated their proceedings, and proving, what was not denied in the argument, that in estimating the proportion of property holders, reference was had to those only on that part of *Washington* street extending to *Spruce* alley, and not the whole length of the street, as described on the plat, and that the owners of two-thirds of the property on the whole street did not apply for the improvement.

The ordinance, which is also set out at large, is entitled, "an ordinance to grade," &c., "*Washington* street, on the west side of *Wills* creek;" and the enacting clause provides, "that *Washington* street shall be graded." It is alleged in the recital, that "the owners of two-thirds of the property on *Washington* street, (commencing at *Wills* creek bridge, and terminating with the property of the heirs of *Robert Swann*, deceased,) have petitioned," &c., and no allusion or reference is elsewhere made in the ordinance to a part only of the street. It is manifest, therefore, on the face of the proceedings, that an ordinance has been passed for the improvement of *Washington* street, west of the bridge, on the application of persons professing to be owners of two-thirds of the property on a *part* of it, and without the application or assent of the owners of two-thirds of the property on the whole line of the street directed to be improved.

We think the objection to this proceeding is fatal. The act of 1815, in terms requires, as a prerequisite to the exercise of the authority conferred upon the corporation, the assent of the owners of two-thirds of the property on the whole line of the

street or alley to be improved.   If a *part* only, is to be improved, the act enables the corporation to gratify an application made for that object by the owners of two-thirds of the property lying on that part, by an ordinance directing that particular part of the street to be improved.   They can only order the whole street to be improved by an application from two-thirds of the property owners on the whole street.   The *city* authorities have no power in this respect, but in virtue of the act of Assembly, and their proceedings, as in all other cases of a special limited jurisdiction, must conform strictly to the authority conferred on them.

The ordinance, therefore, was not authorised, and could confer no power on the commissioners to improve the street, or upon the bailiff to collect the sum claimed from the appellants as their proportion of the expenses.

In this view of the case, it is unnecessary to decide the question which was discussed, as to the authority of the commissioners of the county to express their assent as owners of the public property situate on said street—the court house and the jail.

In any event, the amount of property represented by the petitioners, would be less than two-thirds of all on the whole street; and, therefore, whether the commissioners are to be regarded as owners within the view of the act of 1815, or not, would not affect the result.

The question, whether or not this appeal would lie, was disposed of in the preliminary stage of the argument.   An appeal is given by our statute law, in any civil case in which a writ of error will lie.   As a general rule, an appeal will lie in any civil case where the court below proceeds under its usual and general jurisdiction.

It would be otherwise in a case where a special jurisdiction was to be given to the county court, to be exercised in a peculiar mode, and not to be proceeded in according to the course of the common law, or where an appeal is given to it from some inferior tribunal.

In this instance, the court below acted in virtue of its ordi-

nary jurisdiction, well known as a matter of common practice as well in the courts of this State as in the king's bench in *England.* The process by *certiorari,* is the appropriate and well known mode by which the superior courts examine into the authority of an inferior tribunal, and ascertain whether it has transcended the special powers to which it is limited by law. Whether any error is to be found in the proceeding of the county court, in the exercise of such, its ordinary jurisdiction is clearly a proper subject of enquiry on appeal.

We, therefore, direct the judgment of the county court to be reversed, and the proceedings of the mayor and councilmen of the town of *Cumberland* to be quashed, for want of jurisdiction.

JUDGMENT REVERSED.