LAWRASON RIGGS, Robert M. Rother, J. M. T. Finney, Eli Frank, J. H. M. Rowland, George A. Solter, Hans Froelicher, Thomas Mc-Coster, Edward Rossman, Board of School Commissioners of Baltimore City, Appellants, *vs.*
JOSEPH E. GREEN,
Appellee.

*School Commissioners of Baltimore City: trial of teachers; regularity of proceedings; right to have counsel. Inferior Courts and tribunals: regularity of proceedings. Certiorari: writ of—; no appeal from action of Court granting writ.*

The Board of School Commissioners of Baltimore City in trying charges preferred against a teacher, acts in a *quasi* judicial capacity.      p. 225

No appeal from the decision of the board is provided by law, and if the procedure adopted by the board is irregular and illegal, the teacher has a right to have the proceeding, reviewed and corrected by *certiorari* proceedings. p. 225

In such a case a writ of error will not lie. p. 225

A teacher in the public schools in Baltimore City was summoned before the Board of Public School Commissioners to answer certain charges, etc.; he applied for a writ of *certiorari* to question the regularity of the proceedings in that the charges were not definite and because he was denied counsel; the Superior Court issued the writ and upon the return thereto, refused the board's motion to quash and struck out its judgment dismissing the teacher on the recommendation of the superintendent, and sent the matter back to the board for proper action. The School Board appealed from the action of the Superior Court to the Court of Appeals; *held* that the appeal should be dismissed. p. 228

The writ of *certiorari* does not try the merits of a question, but is to test whether a limited jurisdiction has exceeded its bounds. p. 226

Every inferior jurisdiction, whether created by a public or a private law, is subject to have its proceedings inspected either by appeal or by writ of *certiorari* and mandamus, where such jurisdiction acts judicially. p. 225

The office of the writ is either to test the jurisdiction of the inferior tribunal, or to require it to adopt a legal and regular course of procedure in the conduct of the proceeding in which it may be engaged. p. 226

The service of the writ operates as a *supersedeas* and all future proceedings in the inferior tribunal are erroneous until the matter has been disposed of by the Court issuing the writ.
p. 227

Where the object of issuing the writ is merely to inquire into and direct the regularity of the proceedings before the inferior tribunal, the Court on the return of the writ exercises a *quasi* appellate jurisdiction and no appeal will lie from its decision. p. 228

*Decided May 10th, 1912.*

Appeal from the ' Superior Court of Baltimore City (ELLIOTT, J.).

The facts of the case are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Alexander Preston* (with whom was *S. S. Field* on the brief), for the appellants.

*Thomas Mackenzie* (with whom were *Ogle Marbury* and *H. Findlay French* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The following facts appearing in the record are all that need be stated in the consideration of the question presented by this appeal. Joseph E. Green, the appellee, was a regularly appointed teacher in the public schools of Baltimore City, and was a member of the faculty of the Polytechnic Institute in which he was a teacher of English, having charge of what was known as X Classes which were composed of boys who had failed to pass satisfactory examinations, and in consequence thereof had been set back in their studies. These boys were dissatisfied, disposed to be unruly, and were somewhat difficult to manage. The appellee was a graduate of the Baltimore City College, had pursued a three years course of study at the Johns Hopkins University which had conferred upon him the degree of A. B. in English and Modern Languages, and had been teaching in the Polytechnic Institute since September, 1909.

Samuel M. North was the head of the Department of English in that institute, and in March, 1911, some difference of opinion and ill feeling developed between him and the appellee growing out of the Mayorality Primary Election of that year. The circumstances which give rise to these unpleasant relations, and the annoyances to which the appellee alleges he was subjected by Mr. North, and the difficulties

which he alleges Mr. North threw in the way of the management of the classes under the appellee's charge are fully detailed in the record.

On May 10th, 1911, following his disagreement with Mr. North, the appellee tendered his resignation as an assistant in the Department of English in the Baltimore Polytechnic Institute, and at a meeting of the Board of School Commissioners held on that day his resignation was accepted to take effect June 30th, 1911.

On the 11th of June, 1911, Mr. Green wrote to the board asking permission to withdraw his resignation, and setting forth fully the circumstances under which he was induced to resign his position. A copy of this letter appears in the record.

At a meeting of the board on June 15th, 1911, its action in accepting Mr. Green's resignation was reconsidered, and his request for reopening the case was granted, and at the same meeting Mr. Van Sickle, the Superintendent, was instructed to prefer charges against Mr. Green which he immediately did, the specifications being as follows:

1. He is inefficient in the management of his classes when under instruction.

2. He is inefficient in management when undertaking his share of the general discipline of the school.

3. He is inefficient in instruction because the progress of the classes is impeded by his lack of control during recitation.

On the following day Mr. Green was notified of the action of the board, a copy of the charges was mailed to him, and he was notified that the board had set Wednesday, June 28th, 1911, at 5 P. M., as the date for the trial of the charges, and that the trial would be held at the office of the board, Madison and Lafayette avenue. He was notified to appear at that time and place for trial, and to have present such witnesses in his behalf as he might desire.

On the day set for the trial, Mr. Green filed an answer to the charges in which he averred that he was entitled to know

specifically what the charges made against him were intended to cover, so that a fair opportunity might be given him to reply thereto, but from the general and indefinite character of the charges he was at a loss to know how and in what particulars to defend himself. He proceeded to set up certain facts in refutation of the charges, and made an explanation of much of the unruly conduct of the boys composing his classes; charging that it was due in a great measure to the improper conduct of Mr. North. The concluding paragraph of the answer contained a bitter attack upon Mr. North.

No replication was filed to this answer, and no denial of the allegations thereof appears in the record.

Before the answer had been filed, Mr. Green had retained Mr. Thomas Mackenzie as his counsel to represent him at the trial of the charges. On June 26th, 1911, Mr. Mackenzie wrote to General Riggs, the President of the School Board, notifying him that he had been retained as counsel for Mr. Green, and asking that certain named persons in the employ of the School Board be notified to be present at the hearing as witnesses. In reply to this letter, General Riggs stated that he had been advised by the Secretary of the Board "that it had been the uniform custom of the board not to allow counsel to appear when charges are being considered by the board. If the hearing takes place in open session there can, of course, be no objection to your being present to confer with Mr. Green." The letter of General Riggs was dated the 27th of June, and on the following day, being the day set for the hearing, the petition for the *writ of certiorari* was filed.

The petition, after setting forth many of the facts hereinbefore stated, made the following allegations: "Your petitioner further shows that he is to be tried upon the said charges of inefficiency before the Board of School Commissioners on June 28th, 1911, at 5 o'clock P. M., as will appear from the letter from the Secretary of the said board hereto attached.

Your petitioner shows that while the law governing the Board of School Commissioners, your petitioner having been regularly appointed as a regular teacher cannot be removed by said board except after "charges preferred and trial had." The charges filed against your petitioner are very indefinite, and he is entitled to more specific statement of the said charges. That the "trial" to which the board intends to subject him is one which is not in accordance with the meaning and spirit of the law, for he shows that he has no means of forcing the attendance of any witnesses, many of whom are in the employ of the School Board and some have expressed a hesitation to attend and testify freely against any matter affecting said School Board.

Your petitioner further shows that he has applied to the said board for permission to be represented by counsel at the said "trial". And his said counsel has received from the said board a letter hereto attached from which it is clear that the said board does not intend to allow your petitioner to be represented by counsel."

The prayer of the petition was that the Court "will issue its *writ of certiorari* directed to the said School Board commanding it to transmit to this Court all the papers and proceedings in the matter hereinbefore stated, in order that *the regularity of its proceedings may* be inquired into, and that your petitioner may have such other and further relief as his case may require."

The writ was issued as prayed, and it appears from the return of the sheriff that the writ, a copy of the petition, and the order of Court was served upon the president of the Board of School Commissioners on June 28th, 1911, at 3:50 P. M., which was one hour and a half before the time set for the hearing.

The board disregarded the writ, and proceeded with the trial. An extract from the minutes of the meeting of the board is here transcribed. "President Riggs exhibited a *writ of certiorari* and stated that the same had been served upon him just before leaving his office to attend the board

meeting, the writ being signed by JUDGE ELLIOTT, and in
connection with the Green Case.

On motion, the matter of the writ was referred to the
City Solicitor. On motion, the board proceeded with the
trial of Joseph E. Green. Mr. Green was called, but failed
to answer to his name. The secretary was instructed to note
that Mr. Green had been present at the Administration
Building at about the time fixed for the trial, he having
been seen by several witnesses, but not present when called
for trial. The witnesses in the case were called in the
board room and the trial proceeded. The charges, as pre-
ferred by the Superintendent of Public Instruction, were
read. The answer of Mr. Green was then read.

On motion, the board ordered that the last portion of the
answer, referring to Mr. North in uncomplimentary terms,
be stricken out.

After the evidence had been presented, both for the prose-
cution and the defense, the Superintendent of Public Instruc-
tion made the following recommendation, in conformity with
the provisions of section 99 of the City Charter: "I recom-
mend that Joseph E. Green be removed from the service."

On motion, the board voted that Mr. Green be removed
from the service. Mr. McCosker and Mr. Rossman voting
"No", the latter on the ground that Mr. Green was not
present.

It is to be observed that there was no finding by the board
as to the truth or falsity of the charges preferred against
Mr. Green. On the following day Mr. Green was notified
that he had been found guilty of the charges preferred
against him, and had been removed by the board from the
service in the Public Schools of the City. On the 29th of
June, the appellant made its return to the writ and filed a
motion to quash, assigning in support of the motion the
following reasons:

(*a*) This Court has no jurisdiction to issue said writ.

(*b*) The said Board of School Commissioners is not such
an inferior tribunal to which the writ of *certiorari* can be
directed in order to review any of its proceedings.

(*c*) The petition on its face shows no ground for the issuing of said writ.

(*d*) The petition on its face shows that the Board of School Commissioners had no jurisdiction in the premises to proceed with the trial of the said Joseph E. Green.

(*e*) And for other reasons to be assigned at the hearing.

This appeal was taken from the order of the lower Court overruling the motion to quash, and striking out the order of the Board of School Commissioners by which the appellee was dismissed as a teacher and remanding the proceedings of the board for the trial of the charges against him.

The appellee has moved to dismiss the appeal upon the ground that no appeal lies from an order of the lower Court passed in *certiorari* proceedings of this nature.

Under the provisions of the City Charter, the petitioner could only be removed by the board "on the recommendation of the Superintendent of Public Instruction after charges preferred and trial had." In a trial of charges preferred against a teacher the board acts in a *quasi* judicial capacity. No appeal from the decision of the board is provided by law. In such a situation, if the procedure adopted by the board is irregular, or illegal, the teacher has a right to have that procedure reviewed and corrected by *certiorari* proceedings.

In *Williamson* v. *Carnan*, 1 G. & J. 196, CHIEF JUDGE ARCHER announced the following principles which he said were adjudged and settled by the Court:

*One.* That every inferior jurisdiction, **whether created by** a public or a private law, is subject to have its proceedings inspected either by appeal, or by *certiorari* and *mandamus*, where such jurisdiction acts judicially. 1 *Salk.* 146; *Rex* v. *Inhabitants*, 1 Ld. Ramy. 580. They would be coerced to perform their duties, and restrained and confined within their proper limits as prescribed by law.

*Second.* That where these jurisdictions act in a summary manner, or in a new course different from the common law, a *certiorari* is the peculiar and appropriate remedy; as in such a case, a writ of error will not lie. *Groenvell* v. *Burwell*, 1

Salk. 263. Com. Rep. *Israel* v. *Allen,* decided in Baltimore County Court.

*Three.* That a *certiorari* does not go to try the merits of the question, but to see whether limited jurisdictions have exceeded their bounds. *Rex* v. *Moreley,* 2 Burr, 1042.

*Four.* That a *certiorari* will lie after judgment, where the jurisdiction proceeds in a summary manner, and in a course different from the common law.

*Five.* That a *certiorari* may issue even after judgment executed, where a limited authority has been transcended by an inferior jurisdiction, in cases where no writ of error lies, for the purpose of quashing their proceedings."

The office of the writ is two fold: First, to test the jurisdiction of the inferior tribunal; secondly, to require it to adopt a legal and regular course of procedure in the conduct of the judicial proceeding in which it may be engaged, *i. e.,* to follow the form of procedure legally applicable to the case. In either case, the general rule is that the Court from which the *certiorari* issues, in reviewing the proceedings of the inferior tribunal does not try the merits of the case, unless authorized by statute to do so, but confines itself to determining whether the inferior tribunal has jurisdiction, or has adopted and followed the regular or legal procedure. Mr. Poe in his work on *Pleading and Practice,* 2nd Vol., sec. 724, states that "the object of the writ is not to authorize the Court issuing it to take cognizance of the case and to decide it on its merits, but simply to inquire whether the inferior Court is proceeding within the just limits of its authority and jurisdiction." In *Hamilton* v. *Harwood,* 113 Ill. 154, the Court said: "The office of the writ is only to bring before the Court awarding it the record of the proceeding of the inferior tribunal, and the judgment must either be that the writ be quashed and a *procedendo* awarded, or that the record of its proceedings be quashed * * *. We can only inquire, when a return is made to the writ bringing the record before us, whether the inferior Court had jurisdiction and proceeded legally, *i. e.,* followed the form of

proceeding legally applicable to such cases; and not whether it correctly decided the question arising upon the admission or exclusion of evidence, the giving and refusing of instructions, and other like questions, etc."

In this case the object of the proceeding was not to question the jurisdiction of the board to try the petitioner and to remove him, if found guilty. This jurisdiction is conceded. Its sole object was to inquire into the *regularity of the proceedings* by which his trial was to be conducted. The irregularity and illegality in the procedure of which the petitioner complained were: first, the insufficiency of the charges preferred against him; and secondly, the refusal of the board to allow his counsel to participate in the trial. He had a right to have these objections determined by the Court, and the board should not have proceeded with the trial after the service of the writ upon it. The service of the writ operated as a *supersedeas,* and all further proceedings were erroneous, until the matter had been disposed of by the Court. 2 *Poe Pl. & Prac.* 728.

It is the settled law of this State that where the object of issuing *certiorari* is merely to inquire into and direct the regularity of the procedure before the inferior tribunal, the Court on the return of the writ exercises a *quasi* appellate power in examining the procedure, and its judgment will be final and no appeal will lie. This was distinctly held in *Crockett* v. *Parke,* 7 Gill, 237. In that case the writ of *certiorari* issued, directed to two justices of the peace, commanding them to bring before the Court certain proceedings had before them, instituted by Margaret Parke against the appellant under the Act of 1793, Chapter 43, for a forcible entry and detainer. The principal informality of the proceedings before the justices, alleged in the application, was, that the jury, before they had agreed upon their inquisition, separated without the consent of the appellant, and afterwards came together and signed the inquisition. The Court, upon the return of the writ and examination of the proceedings, ordered the same to be superseded and the clerk was

ordered to return the proceedings to the justices, and the sheriff to proceed in the execution of the writ of restitution. From this order an appeal was taken which the Court dismissed, holding that the Court from which the appeal was taken was exercising a *quasi* appellate jurisdiction, and that its judgment was final and not appealable.

This case was recognized in *Turnpike Company* v. *The N. C. R. R. Co.*, 15 Md. 194, in which the Court says: "Whether an appeal lies in cases of *certiorari* may depend upon the nature of the proceedings, and the object for which that remedy may have been invoked, where, as in *Crockett* v. *Parke*, 7 Gill, 237, the Court on the return of the writ is called upon to exercise a *quasi* appellate power in examining the proceedings of an inferior jurisdiction, which has authority to act in the premises, the judgment is final, and no appeal lies in this Court. But where, as in *Swan* v. *Mayor & C. C. of Cumberland*, 8 Gill, 150, the writ is sued out to test the power and jurisdiction of the inferior authority to act at all in the matter, the Court to which the process is returned acts in its ordinary common law capacity. The proceeding is not limited or special, in the sense in which these terms are generally employed, nor appellate, but according to the course of the common law, and an appeal will lie."

It follows that the motion to dismiss the appeal in this case must be granted, and the appeal dismissed.

*Appeal dismissed, with costs to the appellee.*