761 A.2d 916

The BOARD OF LICENSE COMMISSIONERS
FOR ANNE ARUNDEL COUNTY

v.

CORRIDOR WINE, INC. t/a Corridor Wine & Spirits, et al.

No. 7, Sept. Term, 2000.

Court of Appeals of Maryland.

Nov. 9, 2000.

404

Joseph S. Kaufman, Baltimore; Howard J. Schulman (Schulman & Kaufman, LLC, on brief), Baltimore, for appellant.

Robert T. Shaffer, III (John J. Connolly of Murphy & Shaffer, on brief), Baltimore, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

ELDRIDGE, Judge.

This appeal presents the issue of whether a circuit court common law certiorari action will lie to review the interlocutory decision of an administrative agency on a matter of statutory construction.

## I.

In September 1997, following several contested administrative proceedings and circuit court judicial review actions, the Board of License Commissioners for Anne Arundel County ("the Board") issued a Class "A" Beer, Wine, Liquor, Beer–Wine Tasting and Sunday Sales License to Robert Trone, the President and majority shareholder of Corridor Wine, Inc., and to Denise Bettinger, an officer and minority shareholder of Corridor Wine, Inc. The license authorized Trone, Bettinger, and Corridor Wine, Inc., to conduct a retail alcoholic beverage business at 3321 Laurel–Fort Meade Road in Anne Arundel County.[1]

On October 2, 1998, pursuant to a "sting" operation conducted by the Anne Arundel County Police Department, Elizabeth Ivey, an employee of Corridor, sold alcoholic beverages to a 19-year old woman in violation of Maryland Code (1957, 1998 Repl.Vol., 1999 Supp.), Art. 2B, § 12–108(a)(1).[2] The police issued a criminal citation to Ms. Ivey, and her trial in the District Court was initially scheduled for March 5, 1999. In addition, the Board instituted administrative proceedings against Corridor and scheduled an administrative hearing for the evening of November 24, 1998.

Counsel for Ms. Ivey requested an expedited District Court trial date. The request was granted, and her trial on the misdemeanor charge was re-scheduled for November 24, 1998, the same date as the administrative hearing before the Board. At the District Court trial on November 24th, Ms. Ivey pled guilty to the charge of selling alcoholic beverages to a minor.

---

1. Hereafter, Corridor Wine, Inc., Trone, and Bettinger will be collectively referred to as "Corridor."

2. Art. 2B, § 12–108(a)(1), provides in pertinent part as follows:
 . "A licensee licensed under this article, or any employee of the licensee, may not sell or furnish alcoholic beverages at any time to a person under 21 years of age...."
 Art. 2B, § 12–108(a)(3)(i), provides as follows:
 "A licensee or employee of the licensee violating any of the provisions of this subsection is guilty of a misdemeanor and, upon conviction, suffers the penalties provided by § 16–503 of this article."

The court imposed a fine of $500.00 which was suspended, assessed costs of $55.00, and entered a verdict of "Probation Before Judgment." [3]

At the hearing before the Board later on November 24, 1998, counsel for Corridor moved to dismiss the administrative proceeding, arguing that the "Probation Before Judgment" disposition of Ms. Ivey's criminal case constituted a bar to the administrative proceeding because of Art. 2B, § 12–108(a)(3)(iv), which states as follows:

"(iv) Except as otherwise provided in this section, if any licensee or employee of the licensee is found not guilty, or

---

3. Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 641, provides in part as follows:

" **§ 641. Probation prior to judgment; terms and conditions; intoxicated drivers; violation of probation; fulfillment of terms of probation.**

(a) *Probation after plea or finding of guilt; terms and conditions; waiver of right to appeal from judgment of guilt.*—(1)(i)1. Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate. The terms and conditions may include ordering the person to pay a fine or pecuniary penalty to the State, or to make restitution, but before the court orders a fine, pecuniary penalty, or restitution the person is entitled to notice and a hearing to determine the amount of the fine, pecuniary penalty, or restitution, what payment will be required, and how payment will be made. The terms and conditions also may include any type of rehabilitation program or clinic, or similar program, or the parks program or voluntary hospital program."

\* \* \*

"(b) *Violation of probation.*—Upon violation of a term or condition of probation, the court may enter judgment and proceed with disposition of the person as if the person had not been placed on probation.

"(c) *Fulfillment of terms of probation.*—Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is final disposition of the matter. Discharge of a person under this section shall be without judgment of conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of crime."

placed on probation without a verdict, of any alleged violation of this subsection, this finding operates as a complete bar to any proceeding by any alcoholic beverage law enforcement or licensing authorities against the licensee on account of the alleged violation."

In response to the motion to dismiss, the Board's counsel raised the question as to whether the verdict of "Probation Before Judgment" under Art. 27, § 641, which Ms. Ivey received, was encompassed by the "probation without a verdict" language of Art. 2B, § 12–108(a)(3)(iv).[4] After considerable oral argument by counsel, and questions by Board members, the Board granted the request by Corridor's counsel to continue the proceeding in order that the legal issue could be further researched. Prior to the resumption of the administrative hearing, counsel for Corridor submitted a legal memorandum regarding the meaning and application of Art. 2B, § 12–108(a)(3)(iv).

When the administrative hearing resumed on January 26, 1999, there was additional argument and discussion as to whether the administrative proceeding should be dismissed under § 12–108(a)(3)(iv). Following the argument and discussion, the Board recessed to consider the legal issue, reconvened later on January 26th, and denied the motion to dismiss, holding that "probation before verdict and probation before judgment [are] not ... merely interchangeable [or] synonymous" and that § 12–108(a)(3)(iv) was inapplicable to the case. Thereafter, the Board granted Corridor's motion to continue the hearing on the merits of the violation because one of the

---

4. Prior to 1975, former Art. 27, § 641, authorized a trial court in a criminal case, when the defendant pled "not guilty" or "nolo contendere," to place the defendant on "probation without finding a verdict." By Ch. 527 of the Acts of 1975, former § 641 was repealed and an entirely new § 641 was enacted. The new 1975 section contained no reference to "probation without finding a verdict," and authorized the court, "after determination of guilt," to stay the entry of judgment and place the defendant on probation. For a discussion of the history of former § 641 and the present § 641, as well as the differences between the two statutes, see Judge Cole's opinion for the Court in *Myers v. State*, 303 Md. 639, 645–648, 496 A.2d 312, 315–316 (1985).

witnesses which Corridor had summonsed was sick and unable to attend. The administrative hearing was continued until March 23, 1999, at 6:30 p.m.

Before the administrative hearing was scheduled to resume, Corridor on February 22, 1999, filed in the Circuit Court for Anne Arundel County a "Petition For Writ Of Certiorari," requesting the court to issue the writ to the Board "[b]ecause the Board has purported to assert jurisdiction over Corridor under circumstances where no such jurisdiction exists...." Corridor asserted in the petition "that Ms. Ivey's probation before judgment deprived the Board of jurisdiction under § 12–108(a)(3)(iv)." Corridor requested that the writ stay the administrative proceeding and require the Board to produce the administrative record "so that this Court may determine the Board's fundamental jurisdiction to proceed." On the same day that Corridor's petition was filed, the Circuit Court issued a writ of certiorari and ordered that the administrative proceeding be stayed pending further order from the Circuit Court.

After the Board's answer to the petition, the filing of legal memoranda, and a hearing, the Circuit Court issued an opinion holding that the certiorari action was appropriate and that the "probation without a verdict" language in Art. 2B, § 12–108(a)(3)(iv), should "be interpreted to mean 'probation before judgment.'" The court entered an order adjudicating that the Board "lacks jurisdiction to proceed in the pending administrative matter against the Petitioner," and remanding the case to the Board "with instructions to dismiss the pending administrative action against the Petitioner for lack of jurisdiction...."

The Board took an appeal to the Court of Special Appeals, and we issued a writ of certiorari prior to oral argument in that court. *License Commissioners v. Corridor Wine,* 358 Md. 381, 749 A.2d 172 (2000). The parties' arguments in this Court concern the appropriateness of the certiorari action in the Circuit Court and the correct interpretation of Art. 2B, § 12–108(a)(3)(iv). More specifically, the debated issues in-

clude whether a common law certiorari action may be brought under the circumstances here, whether the underlying statutory interpretation issue relates to the subject matter jurisdiction of the Board, whether Corridor should have been required to exhaust its administrative remedy and bring a judicial review action after a final decision by the Board,[5] and which interpretation of Art. 2B, § 12–108(a)(3)(iv), is correct.

## II.

We shall hold, on two alternative grounds, that a common law certiorari action does not lie under the circumstances of this case. We shall further hold that Corridor was required to await a final administrative decision before seeking judicial review in the Circuit Court. Consequently, we shall not reach the issue regarding the correct interpretation of Art. 2B, § 12–108(a)(3)(iv).

## A.

The traditional common law definition of a writ of certiorari was as follows: *"Certiorari* is a writ issued by a superior court, directed to an inferior tribunal, commanding it to return the record of its proceedings in a cause into such superior court, in order that inquiry may be duly made into its authority or jurisdiction." 2 John Prentiss Poe, *Pleading and Practice*, § 722, at 692 (Tiffany ed.1925). The writ of certiorari has three distinct uses under present Maryland practice.

*First,* pursuant to statute, the writ is issued by the Court of Appeals in the exercise of the Court's appellate jurisdiction. *See* Code (1974, 1998 Repl.Vol.), §§ 12–201 through 12–203 and 12–305 of the Courts and Judicial Proceedings Article.

---

5. Code (1957, 1998 Repl.Vol., 1999 Supp.), Art. 2B, § 16–101, authorizes an action in the circuit courts for judicial review of "[t]he decision of a local licensing board, in approving, suspending, revoking and restricting, or refusing to approve, suspend, revoke or restrict any license, or licensee...." *See Edgewater Liquors v. Liston*, 349 Md. 803, 709 A.2d 1301 (1998).

*Second,* when there is no statutory provision for judicial review of final adjudicatory decisions by administrative agencies, either a certiorari or a mandamus action in the appropriate circuit court is normally available for ordinary "substantial evidence" judicial review of the adjudicatory administrative decisions. *See, e.g., Bucktail, LLC v. County Council of Talbot County,* 352 Md. 530, 542, 723 A.2d 440, 445 (1999); *State v. Board of Education,* 346 Md. 633, 642–644, 697 A.2d 1334, 1338–1339 (1997); *Goodwich v. Nolan,* 343 Md. 130, 146, 680 A.2d 1040, 1048 (1996); *Medical Waste v. Maryland Waste,* 327 Md. 596, 610, 612 A.2d 241, 248 (1992); *Silverman v. Maryland Deposit,* 317 Md. 306, 324–326, 563 A.2d 402, 411–412 (1989); *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 501–507, 331 A.2d 55, 65–68 (1975); *Balto. Import Car Service & Storage, Inc. v. Md. Port Auth.,* 258 Md. 335, 342–343, 265 A.2d 866, 869–870 (1970); *State Health Dep't v. Walker,* 238 Md. 512, 522–523, 209 A.2d 555, 561 (1965); *Riggs v. Green,* 118 Md. 218, 227–228, 84 A. 343, 345–346 (1912). *See also Md. Comm'n On Human Relations v. Bethlehem Steel Corp.,* 295 Md. 586, 457 A.2d 1146 (1983); *Johnson v. Board of Zoning Appeals,* 196 Md. 400, 76 A.2d 736 (1950) (Instead of involving common law judicial review by certiorari or mandamus because of the absence of statutory judicial review, this case was brought under a local statute expressly authorizing circuit court judicial review of an administrative decision by a petition for a writ of certiorari). The use of certiorari or mandamus for judicial review of adjudicatory administrative decisions, like statutory judicial review of such decisions, is an exercise of a circuit court's original jurisdiction and not its appellate jurisdiction. *Gisriel v. Ocean City Supervisors of Elections Board,* 345 Md. 477, 490–496, 693 A.2d 757, 763–767 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998), and cases there cited. Most of the Maryland cases involving nonstatutory judicial review of adjudicatory decisions by administrative agencies have been denominated "mandamus" actions rather than "certiorari" actions, although the substance of these judicial review actions is the same regardless of the labels. It is probably more

appropriate to treat such actions as mandamus actions, instead of certiorari actions, as writs of mandamus have traditionally been issued to officials and agencies outside of the judicial branch of government, whereas writs of certiorari have traditionally been issued to "lower tribunals" in relation to the issuing tribunal.

■ *Third,* "[i]t has long been the common law rule in Maryland that a circuit court has jurisdiction to issue a writ of certiorari to a lower court for the purpose of inquiring into that tribunal's jurisdiction." *Kawamura v. State,* 299 Md. 276, 283, 473 A.2d 438, 442 (1984). *See, e.g., Fisher v. State,* 305 Md. 357, 362–363, 504 A.2d 626, 628–629 (1986); *Thistlewood v. Trial Magistrate for Ocean City,* 236 Md. 548, 550, 204 A.2d 688, 689 (1964); *State v. Jacob,* 234 Md. 452, 457–458, 199 A.2d 803, 806 (1964); *Ruth v. Durendo,* 166 Md. 83, 86, 170 A. 582, 583 (1934); *State v. Stafford,* 160 Md. 385, 389, 153 A. 77, 79 (1931); *State ex rel. Baum v. Warden,* 110 Md. 579, 583, 73 A. 294, 295–296 (1909); *Roth v. State,* 89 Md. 524, 526–527, 43 A. 769, 770 (1899); *Weed v. Lewis,* 80 Md. 126, 127–128, 30 A. 610, 611 (1894); *Judefind v. State,* 78 Md. 510, 512, 28 A. 405, 406 (1894); *Kane v. State,* 70 Md. 546, 552, 17 A. 557, 558 (1889); *Rayner v. State,* 52 Md. 368, 377 (1879); *Hall v. State,* 12 G. & J. 329 (1842). The writ of certiorari for such purpose may be issued by a circuit court even in the absence of a final decision by the lower court, *Kawamura v. State, supra,* 299 Md. at 280–281, 473 A.2d at 441. This is the traditional common law use of certiorari, and it falls within the original jurisdiction of a circuit court. *Kawamura,* 299 Md. at 283, 473 A.2d at 442; *Rayner v. State, supra,* 52 Md. at 377. Absent a statute, an appellate court has no authority to issue a writ of certiorari to review the jurisdiction of a court below. *Hendrick v. State,* 115 Md. 552, 557, 81 A. 18, 19 (1911).[6]

---

6. While this Court's most recent opinions clearly draw a distinction between the second and third types of certiorari actions, a few of our opinions contain language which, to some extent, seems to blur the difference. *See, e.g., Criminal Inj. Comp. Bd. v. ·Gould,* 273 Md. 486, 504–506, 331 A.2d 55, 67–68 (1975). *Compare State v. Jacob,* 234 Md. 452, 458, 199 A.2d 803, 806 (1964) ("The line of demarcation between

In the present case, Corridor invoked the third category set forth above. It argues that the Board lacked "subject matter jurisdiction" (Respondent's brief at 17–18) and that Corridor

"invoked the Circuit Court's limited certiorari jurisdiction. Such limited jurisdiction existed at common law and remains viable today ... precisely to question the fundamental jurisdiction of inferior tribunals, even when a statutory right of appeal exists." (*Id.* at 21).

Corridor's argument necessarily presents the threshold question of whether the Board is an "inferior tribunal" for purposes of this third type of certiorari action.

■ In our view, this third use of a writ of certiorari, for the purpose of inquiring into an "inferior tribunal's" subject matter jurisdiction, does not apply to administrative agencies in the executive branch of the state government or to local government administrative agencies.

In all of the above-cited cases involving a circuit court's or county court's use of certiorari to inquire into the jurisdiction of an "inferior tribunal," the so-called "inferior tribunal" was a court, such as the District Court of Maryland, a trial magistrate court, or a justice of the peace court. The District Court is, and the trial magistrate or justice of the peace courts were, part of the judicial branch of government. The District Court is, and the others were, trial courts of limited jurisdiction. Not only does the third category of certiorari cases involve courts of limited jurisdiction, but this Court's opinions in those

---

the two types of cases is not always clear and distinct ..."); *Riggs v. Green*, 118 Md. 218, 225–228, 84 A. 343, 345–346 (1912).

In addition, one older case seems to sanction a use of certiorari which falls within none of the three categories described above. Thus, in *Swann v. Mayor and Common Councilmen of the Town of Cumberland*, 8 Gill. 150 (1849), this Court upheld the use of certiorari to determine whether an ordinance enacted by the Town of Cumberland was valid under the enabling statute enacted by the General Assembly. The challenged action was not quasi-judicial or adjudicatory but was legislative in nature. Under present Maryland practice, unless the issue arises in some other adjudicatory proceeding, a declaratory judgment or injunction action would be the appropriate vehicle for challenging the validity of a legislative enactment.

cases use the phrases "lower court," "judicial tribunal," "inferior tribunal," and "tribunal" interchangeably. *See, e.g., Kawamura,* 299 Md. at 283, 473 A.2d at 442 ("a circuit court has jurisdiction to issue a writ of certiorari to a *lower court* for the purpose of inquiring into *that tribunal's* jurisdiction") (emphasis added).

■ The use of the word "inferior" in describing these tribunals is perhaps unfortunate, as it has nothing to do with the quality, performance, or stature of the courts. Rather, the cases use the phrase "inferior tribunals" because it reflects the position of such courts, below the circuit courts, in the judicial hierarchy for purposes of oversight and appeal. The purpose of a writ of certiorari issued by a court of general jurisdiction is to examine "the jurisdiction of the [limited jurisdiction] magistrate to try the case." *Baum v. Warden, supra,* 110 Md. at 583, 73 A. at 295. As an "inferior tribunal's" subject matter jurisdiction is limited, the use of certiorari by a "superior court" of general jurisdiction constitutes part of the oversight function within the judiciary. If the court of limited jurisdiction has no subject matter jurisdiction "to try the case," the case very likely belongs either in the court of general jurisdiction or does not belong in the judiciary.

Administrative agencies are not courts and do not exercise judicial authority. *Shell Oil Co. v. Supervisor,* 276 Md. 36, 44–47, 343 A.2d 521, 525–528 (1975). Article 8 of the Maryland Declaration of Rights, providing for the separation of powers, "prohibits administrative agencies from performing judicial functions." *Shell Oil Co. v. Supervisor, supra,* 276 Md. at 46, 343 A.2d at 526–527. With very few exceptions, administrative agencies are not within the judicial branch of government. Instead, they are parts of the executive branch of the state government or parts of local governments. Consequently, administrative agencies are not, and cannot be, "inferior tribunals" in relation to the circuit courts.

■ Moreover, circuit courts exercise neither appellate nor oversight authority with regard to administrative agencies. Even though some statutes and cases improperly use the word

"appeal" to refer to actions for judicial review of adjudicatory administrative decisions, they are not appeals. Such actions are original actions in the circuit courts. *See, e.g., Prince George's County v. Beretta,* 358 Md. 166, 169, 747 A.2d 647, 648 (2000); *Kim v. Comptroller,* 350 Md. 527, 534–536, 714 A.2d 176, 179–180 (1998); *Driggs Corp. v. Md. Aviation,* 348 Md. 389, 398–399, 704 A.2d 433, 438–439 (1998); *Colao v. County Council,* 346 Md. 342, 359–363, 697 A.2d 96, 104–106 (1997); *Gisriel v. Ocean City Elections Board, supra,* 345 Md. at 490–496, 693 A.2d at 764–767. A circuit court exercises no oversight authority over administrative agencies. In accordance with Article 8 of the Declaration of Rights, oversight authority over an executive branch administrative agency lies within the executive branch of the government.

■ Under the Maryland Constitution, Maryland common law, and numerous statutes, circuit courts do have jurisdiction over actions for judicial review of adjudicatory administrative decisions. The purpose of such actions, however, is not to give courts an oversight function over agencies in another branch of government. Instead, like many other causes of action in the circuit courts, the purpose underlying judicial review actions is to protect, in accordance with law, the personal and property rights of persons and private entities. *State v. Board of Education, supra,* 346 Md. at 642–645, 697 A.2d at 1338–1340.

No case in this Court, which has been called to our attention, has held that a circuit court may issue a writ of certiorari to an administrative agency in order to examine the subject matter jurisdiction of the agency over a case still pending before the agency. Nonetheless, there are a few older opinions containing language suggesting that such jurisdiction might exist.

In *Williamson v. Carnan,* 1 G. & J. 184, 186, 193–198 (1828), involving an appeal from the Court of Chancery, the report of the case contains an opinion of Chancellor Bland referring to an earlier action of the County Court of Baltimore County issuing a writ of certiorari to the Levy Court of

Baltimore County in a road closing case. The report in 1 G. & J. also contains the opinion of Judge Archer for the County Court in the road closing case. It is clear from the lower court opinions, however, that the Levy Court was then viewed as an "inferior judicial" tribunal and a court of "limited jurisdiction[ ]." *Williamson v. Carnan, supra,* 1 G. & J. at 196–197.

In *Gaither v. Watkins,* 66 Md. 576, 8 A. 464 (1887), this Court affirmed the judgment of the Circuit Court for Howard County quashing a writ of certiorari which had been issued by the Clerk of the Circuit Court to the County Commissioners with regard to a road opening matter before the County Commissioners. The grounds for the affirmance were that the clerk had no authority to issue the writ without an order of the Circuit Court and that the challenge to the County Commissioners' action did not relate to a jurisdictional issue. The summary of the attorneys' arguments in the report of the case and this Court's opinion suggest that no issue was raised about whether the County Commissioners constituted a "tribunal below" (66 Md. at 581, 8 A. at 465–466) for purposes of certiorari jurisdiction.

Neither of the above-discussed cases constitutes authority for the notion that, absent a statute, a writ of certiorari may be issued to an administrative agency, prior to a final administrative decision, to examine the subject matter jurisdiction of the agency. Furthermore, to the extent that any language in those opinions might seem to support circuit court certiorari jurisdiction to determine whether an administrative agency had jurisdiction over an adjudicatory proceeding pending before the agency, such language reflected a long-time confusion in Maryland over the nature of some adjudicatory administrative agencies and their relationship to the courts of general jurisdiction. Prior to this Court's 1975 opinion in *Shell Oil Co. v. Supervisor, supra,* 276 Md. 36, 343 A.2d 521, many administrative agencies performing adjudicatory functions were erroneously treated as if they were courts of limited jurisdiction, and circuit court judicial review of their decisions was often considered to be an "appeal," in the same sense as an appeal

from a trial magistrate court to a circuit court. For a recent review of the pre–1975 treatment of the relationship between adjudicatory administrative agencies and the circuit courts, *see Gisriel v. Ocean City Elections Board, supra,* 345 Md. at 493–496, 693 A.2d at 765–768. As previously discussed, however, these agencies are wholly different from courts of limited jurisdiction.

■ Consequently, the common law authority of a circuit court to issue a writ of certiorari to determine whether an "inferior tribunal" has jurisdiction over a matter pending before that tribunal is limited to matters pending in the District Court of Maryland or one of the Orphans' Courts. The Circuit Court for Anne Arundel County was not authorized to review, by certiorari, the Board's jurisdiction over a case still pending before the Board.

### B.

■ Alternatively, even if the Board were a court of limited jurisdiction, the statutory interpretation issue underlying this case does not relate to the subject matter jurisdiction of the Board. Judge J. Dudley Digges for this Court, in *First Federated Commodity Trust Corp. v. Commissioner,* 272 Md. 329, 335, 322 A.2d 539, 543 (1974), set forth the general test for determining the subject matter jurisdiction of a tribunal:

"If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction."

*See also Board of Nursing v. Nechay,* 347 Md. 396, 405–407, 701 A.2d 405, 410–411 (1997). Art. 2B of the Maryland Code clearly gives the Board the power to render a decision over the class of cases within which the present case falls.

Simply because a statutory provision directs a court or an adjudicatory agency to decide a case in a particular way, if certain circumstances are shown, does not create an issue going to the court's or agency's subject matter jurisdiction.

There have been numerous cases in this Court involving the situation where a trial court or an adjudicatory agency has jurisdiction over the subject matter, but where a statute directs the court or agency, under certain circumstances, to exercise its jurisdiction in a particular way, or to rule in favor of a respondent, or to dismiss the case, and the tribunal erroneously refuses to do so because of an error of statutory interpretation or an error of fact. In these situations, this Court has regularly held that the matter did not concern the subject matter jurisdiction of the trial court or the agency. *See, e.g., Montgomery County v. Ward,* 331 Md. 521, 527–528, 629 A.2d 619, 622 (1993); *Md. Comm'n On Human Relations v. Beth. Steel, supra,* 295 Md. at 594–595, 457 A.2d at 1150–1151; *Comm'n On Human Relations v. Mass Transit,* 294 Md. 225, 233–235, 449 A.2d 385, 389–390 (1982); *Parks v. State,* 287 Md. 11, 16–17, 410 A.2d 597, 601 (1980); *Block v. State,* 286 Md. 266, 268–271, 407 A.2d 320, 321–323 (1979). *See also Cardinell v. State,* 335 Md. 381, 424–425 n. 8, 644 A.2d 11, 32 n. 8 (1994) (dissenting opinion).

 The above-cited cases are also dispositive of Corridor's alternative argument that, apart from the availability of a writ of certiorari, it was entitled to judicial review of the Board's interlocutory statutory interpretation ruling because the Board was "palpably without jurisdiction." (Respondents' brief at 19). It is a general principle of Maryland Administrative law that " 'an action for judicial review of an administrative order will lie only if the administrative order is final.' " *Driggs Corp. v. Md. Aviation, supra,* 348 Md. at 407, 704 A.2d at 442, quoting *Holiday Spas v. Montgomery County,* 315 Md. 390, 395, 554 A.2d 1197, 1199 (1989). We have assumed, without deciding, that there may be an exception to this principle where an administrative agency is " 'palpably without jurisdiction.' " *Comm'n On Human Relations v. Mass Transit, supra,* 294 Md. at 235, 449 A.2d at 390 ("It may well be that exhaustion of administrative remedies is not required where an 'agency is palpably without jurisdiction.' Davis, *Administrative Law Treatise* (1958), Ch. 20, § 20.01, p. 56"). *See Montgomery County v. Ward, supra,* 331 Md. at 527, 629

A.2d at 622. Again, we need not in this case decide whether Maryland law recognizes such exception because the Board was acting within its subject matter jurisdiction.

The underlying statutory interpretation issue concerning the meaning of Art. 2B, § 12–108(a)(3)(iv), relates to how the Board should exercise its jurisdiction in a particular case, and not whether it has subject matter jurisdiction over the case. This case is very similar to *Comm'n On Human Relations v. Mass Transit, supra,* where the attorney for the Mass Transit Administration (MTA) argued that a complaint of discrimination against the Administration, which was filed with the Human Relations Commission, should be dismissed under a correct interpretation of the statutory provisions. In rejecting the Administration's effort to obtain judicial review prior to a final administrative decision, we stated (294 Md. at 233, 449 A.2d at 389):

> "The MTA in the present case has couched the statutory interpretation issue in terms of the Commission's 'authority' or 'power' or 'jurisdiction,' and has charged that the Commission is attempting to 'expand' its jurisdiction and proceed in an unauthorized manner. Nevertheless, many, if not most, statutory interpretation issues arising in administrative proceedings could be phrased in terms of the agency's 'authority,' 'power' or 'jurisdiction' to take a certain type of action in a specific case. A party's argument that an agency will be exceeding its authority if it ultimately interprets the statute and decides the case contrary to that party's position, does not excuse the failure to await a final agency decision."

The same is true in the case at bar.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO QUASH THE WRIT OF CERTIORARI AND DISMISS THE ACTION. COSTS TO BE PAID BY THE RESPONDENTS.*